ACCEPTED
03-14-00731-CV
3912728
THIRD COURT OF APPEALS
AUSTIN, TEXAS
1/27/2015 11:49:34 AM
JEFFREY D. KYLE
CLERK

## CAUSE NO. 03-14-00731-CV

## IN THE COURT OF APPEALS

## THIRD DISTRICT OF TEXAS

## AUSTIN, TEXAS

FILED IN
3rd COURT OF APPEALS
AUSTIN, TEXAS
1/27/2015 11:49:34 AM
JEFFREY D. KYLE
Clerk

_____

## JUANA MENDEZ VALDEZ
## ET VIR JUAN VALDEZ

APPELLANTS,

VS.

## MELODY MUELLER MOERBE

APPELLEE,

_____

## BRIEF OF APPELLANT

_____

**O. F. JONES III**
**ATTORNEY AT LAW**
**109 W. SANTA ROSA**
**P. O. DRAWER E**
**VICTORIA, TEXAS 77902**
  **361-573-6381 (Phone)**
  **361-576-4607 (Fax)**
  **OFJones360@gmail.com**
  **State Bar No. 10974000**
**ATTORNEY FOR APPELLANT**

## APPELLANT  REQUESTS  ORAL ARGUMENT

i

## IDENTITIES OF THE PARTIES AND COUNSEL

**APPELLANTS:**

**JUANA MENDEZ VALDEZ**
  **ET VIR JUAN VALDEZ**

**Appellants Mailing Address is**
    **P. O. Box 1008**
    **Flatonia, Texas    78941**

**Her actual residence is 811 Walnut**

**APPELLEE:**

**Melody Mueller Moerbe**

**Appellee's Mailing Address is**
    **P. O. Box 130**
    **Bleiblerville, Texas 78931**

**COUNSEL FOR APPELLANTS;**

**O. F. JONES III**
**State Bar No. 10974000**
**LAW OFFICE OF O. F. JONES III**
**109 W. Santa Rosa Street**
**P. O. Drawer E**
**Victoria, Texas 77902**
**361-573-6381 (phone)**
**361-576-4607 ( fax)**
**email: OFJones360@gmail.com**

**COUNSEL FOR APPELLEES:**

**Mr. Michael Trefny**
**State Bar No. 20207650**

**Gates, Steen, Gillespie & Trefny**
**P. O. Box 458**
**Columbus, Texas   78934**
**979-732-2301 (phone)**
**979-732-2303 (fax)**
**email: mtrefny@gsgtlawfirm.com**

# TABLE OF CONTENTS

PAGE

NAME OF PARTIES ............................................................. i, ii

TABLE OF CONTENTS ...................................................... iii, iv

LIST OF AUTHORITIES ................................................... v, vi, vii, viii

STATEMENT OF NATURE OF THE CASE ..................................... 1

ISSUES PRESENTED ......................................................... 2

STATEMENT OF FACTS ..................................................... 2

   a. Procedural Background ................................................. 2

   b. Factual Background ................................................... 6

SUMMARY OF THE ARGUMENT ............................................. 18

ARGUMENT ................................................................... 20

   a. Standard of Review...................................................... 20

   b. Ten Year Statute ....................................................... 22

   c. Five Year Statute....................................................... 30

   d. Erroneous Instructions ................................................. 34

PRAYER ....................................................................... 35

CERTIFICATE OF SERVICE ................................................. 36

CERTIFICATE OF WORD Count ............................................. 36


APPENDIX

    a      Judgment of the Trial Court

    b.     Court's Charge and Verdict

    c.     Notice of Appeal

d.      Plat (Plaintiff's Exhibit No 8)

e.      Appellant's Motion for Judgment Not Withstanding the Verdict

f.      Brief in County Court regarding juridiction

# LIST OF AUTHORITIES

**Case**                                                        **Page(s)**

*Aguilar v. Weber*, 72 S. W. 3d 729, 732
(Tex. App. - Waco 2002, no pet )................................................ 33,34

*Anchor Casualty Company v. Bowers*,
393 S. W. 2d 168, (Tex. 1965)................................................ 23

*Blaylock v. Riser,* 354 S. W. 2d 134, 136, (Tex. 1962)...................... 32

*Brownson v. Scanlon*, 59 Tex. 222, 226 (Tex. 1883)......................... *28,29*

*Burton's Heirs v. Carroll*, 72 S. W. 582 (Tex. 1903)........................ 32

*Commonwealth Lloyd's Insurance Co. v. Thomas*, 678 S. W.
2d 278, 288 (Tex. App. - Fort Worth 1984, wr. ref. n. r. e.).... 21

*De Alonzo v. Solis*, 709 S. W. 2d 690, (Tex. App. - San Antonio,
1985, wr. ref. n. r. e.)................................................................. 27

*Dormady v. Dinero Land & Cattle Co.*, 61 S. W. 3d 555, 557,
( Tex. App. - San Antonio, 2001 pet. dism.) .......................... 33

*Doyle v. Ellis*, 549 S. W. 2d 62, (Tex. Civ. App. - Waco, 1977),
no wr. hist.................................................................................. 27

*Galvan v. Public Utilities Board,* 778 S. W. 2d 580
(Tex. Ct. App. - Corpus Christi, 1989, no wr. hist.)................ 23

*Gentry v. Marburger*, 596 S. W. 2d 201, 203 (Tex. App. - Houston
[1st Dist] 1980, wr ref n r e.)................................................... 33

*Great American Reserve Ins. Co. v. San Antonio Plumbing
Supply Co.*, 391 S. W. 2d 41(Tex. 1965).....................................  23

*Griswold v Comer*, 161 S. W. 423, 427 (Tex. Civ. App. - Galveston,
1913,  modified on appeal as to the extent of the interest
involved, Tex. Com. App. - Sec. A., opinion adopted,
209 S. W. 139)..............................................................  28, 29

*Holley v. Watts*, 629 S. W. 694, 696 (Tex.1982)................................  20

*In Re Columbia Medical Center of Los Colinas*,
290 S. W 3d. 204 (Tex. 2009*)* ...............................................  22

*In Re King's Estate,* 244 S. W. 2d 660, 662 (Tex. 1951)....................  21

*In Re Toyota Motor Sales U. S. A., Inc..* 407 S. W. 3d 746
(Tex. 2013).................................................................  22

*In Re United Scaffolding, Inc.*  377S. W. 3d 685, (Tex. 2012)............  *22*

*King v. Bauer*, 688 S. W. 2d 845, 846 (Tex. 1985*)*............................  *21*

*Lopez v. Sulak*, 76 S. W.  3rd 597, 605 (Tex. App. - Corpus Christi
2002,  no pet.)............................................................  32

*Mata v. Mata*, 710 S. W. 2d 756, 757-8 ( Tex. App. - Corpus
Christi, 1986,  no wr.)...................................................  20

*McGalliard v. Kuhlmann*, 722 S. W. 2d 694, 696-697 (Tex. 1986)...  20

*McQuire v. City of Dallas*, 141 Tex. 170, 170 S. W. 2d 722 (1943)..  23,24

*Morris v. American Home Mort. Servicing, Inc.*, 360 S. W. 3rd 32, 34,
(Tex. App. - Houston [1st Dist] 2011, no pet)..........................  *33*

*Owens Development Co. v Calvert*,  157 Tex. 212, 302 S. W. 2d 640
(1957) ...................................................................  23.

*Padilla v. NCJ Dev., Inc.* 218 S. W. 3d 811, 815, (Tex. App.-
El Paso, 2007, pet dism)................................................................ *32*

*Pool v. Ford Motor Co.*, 715 S. W. 2d 629, 635 (Tex. 1986).............. 21


*Rice v. Pinney*, 51 S. W. 3d 705, 709 (Tex.App. - Dallas, 2001,
no pet.)........................................................................................ 31

*Ritchey v. Crawford*, 734 S. W. 2d 85, 86 (Tex. App. - Houston,
[1st Dist.] 1987, no writ.).......................................................... 20

*Rudy v. Hardy*, 610 S W. 2d 565, (Tex. App. - Waco, 1980, wr.
dism)........................................................................................... 27

*Sparkman v. State*, 968 S. W. 2d 373, (Tex. App. - Tyler, 1997,
wr. ref.) ..... ............................................................................... *34*

*Stafford v. Jackson*, 687 S. W. 2d 784 Tex. App. - Houston
[14th Dist}, no wr. hist.)............................................................ 29

*The Heirs of Berry and Sarah Simmons v. Bouligny*, (Tex. App. -
Corpus Christi,  2010 Cause No. 13-09-00269-CV;
apparently unpublished).................................................................. 27

*Villalon v. Bank One*, 176 S. W. 3d 66, 70 (Tex. App. - Houston
[1st Dist.], 2004, pet den.)........................................................ 33

*Wallis v. Long*, 75 S. W. 2d.  138, 142 (Te. Civ. App. - Galveston,
1934, wr. ref.) ........................................................................... 27

*Ward v. Malone*, 115 S. W 3d 267, 270, (Tex. App. - Corpus
Christi, 2003, pet. den.) ............................................................ 34

*Westerlund v. Naaman,* 833 S. W. 2d 725, (Tex.  Ct.  App. - Houston [
1st Dist.], 1992 , no wr. hist) .................................................... 23

Calvert, "No Evidence" and "Insufficient Evidence" Points of Error,

     38 Tex. Law Review, 361 (1960)................................................. 21

TRCP Rule 746; ....................................................................... 32


Sec. 24.001 et seq., Texas Property Code;.......................................... 32

 Sec. 27.031, Government Code. ........................................................ 32

 Tex, Civ. Prac. and Remedies Code §16.030 (a)................................. 32

O'Connor's Texas Causes of Action, p. 434, 2013 Ed....................... 33

# CAUSE NO. 03-14-00731-CV

## IN THE COURT OF APPEALS

## THIRD DISTRICT OF TEXAS

## AUSTIN, TEXAS

_____

## JUANA MENDEZ VALDEZ

## ET VIR JUAN VALDEZ

APPELLANTS,

VS.

## MELODY MUELLER MOERBE

APPELLEE,

_____

## **BRIEF OF APPELLANT**

_____

TO THE HONORABLE JUDGES OF SAID COURT:

JUANA MENDEZ VALDEZ , ET VIR JUAN VALDEZ,  Appellants in the

above styled and numbered cause,  presents herewith their Appellant's Brief, setting

forth their reasons why the Orders and Judgment of the Court below should be

1

reversed and rendered, or alternatively, remanded for a new trial.

## STATEMENT OF THE NATURE OF THE CASE

Plaintiff's filed this suit as a Trespass To Try Title case, and alternatively as a Declaratory Judgment action, in which Appellants, as the Plaintiffs in the trial court, seek to establish title based upon the five year and the ten year statute of limitations. (Art. 16.025 and 16.026, Texas Civil Practice and Remedies Code.)

## ISSUES PRESENTED

Appellants assert that the trial court erred in refusing to grant their Motion for Instructed Verdict, (Reporters Record, [hereafter RR] p. 48 through 72) and their Motion for Judgment Not Withstanding the Verdict, ( Clerk's Supplemental Record [hereafter SCR] p. 26 - 41) based upon the five year and the ten year statute of limitations. Appellant assert that the verdict of the jury, (Original Clerk's Record, [hereafter CR] p. 55) in response to two special issues, was against the great weight and preponderance of the evidence, and that Appellants, as Plaintiffs below, had established their case as a matter of law.

Alternatively, Appellants assert that the trial court committed reversible error by failing to properly charge the jury on the law.

## STATEMENT OF FACTS

a. **Procedural Background**.

2

This appeal is from a judgment of the trial court, rendered following a jury trial. (CR. p. 77) A Clerk's Record (CR), and a Supplemental Clerk's Record (SCR) has been filed as well as a Reporters Record (RR); the Reporters Record does not include the jury voir dire, because Appellant makes no complaint of the jury or the selection process of the jury.

Appellants were the Plaintiffs in the trial court. Plaintiffs filed this suit to establish that they had perfected title to the property that they had occupied and improved since 1999, based upon the five and the ten year statutes of limitations. (Plaintiff's Original Petition, CR. p. 4). Plaintiffs asserted a Trespass to Try Title claim, but alternatively to the extent, if any, that their claims could not be asserted under the theory of a Trespass to Try Title action, they sought a declaratory judgment that they had established adverse possession of the premises in question so as to vest title in them, and they asked for attorney fees under that statute as well. The defendant never asserted a defensive plea of "Not Guilty".

Plaintiffs later filed a First Amended Pleading, (CR p. 26 - 36), in order to also assert limitation title to the remainder of her 1.93 acre tract that was owned by other entities and not within the Seeberger tract claimed by defendant Moerbe; those claims were then severed (CR. p. 54).

The case was complicated because on March 1, 2012 Appellee filed a

Forcible Entry and Detainer suit in the Justice Court in Fayette County. (Defendant's Exhibit 32, RR Vol. 6)  An answer was filed by Appellant, but the Justice rendered a judgment for Appellee.  That judgment was appealed to the County Court, where Appellee filed a Plea to the Jurisdiction.  A hearing was held, and the County Judge abated the case, pending the result of this case which was then pending in the District Court.

Although Defendant did not actually plead that filed complaint as a defense, or that it acted to interrupt Plaintiff's possession, Plaintiff did plead the existence of the suit  in Paragraph 6 of Plaintiff's First Amended Petition (CR. p. 26), and then asserted its lack of relevancy and efficacy,  inter alia, in Plaintiffs Motion in Limine, Paragraph XXII.  (SCR, p. 4 et seq.)   (See also Court's Order, SCR. p. 10, 11).   In conjunction with that position, counsel for Appellant gave the trial court judge a copy of Plaintiff's Brief in Support of the Plea to the Jurisdiction, filed in the County Court; that document is attached as Appendix No. f,  and is largely incorporated hereafter in this Brief.

After both sides had rested, Plaintiff submitted an oral Motion for Instructed Verdict, (RR. Vol. 4, page 48 et seq.)  which was denied, but the argument continued as to the application of both the five and ten year statutes, and again was denied,  (RR. Vol. 4, p. 54.)

4

The court's Charge Conference was laborious (RR Vol 4, ps. 48 - 71) because the court struggled with the appropriate instructions to be included in view of the Defendant having filed the Forcible Entry and Detainer suit  (on March 1, 2012) within five years of the date that Plaintiff recorded their deed (May 16, 2007) that included the Seeberger tract claimed by Defendant.   Both sides requested instructions that were or were not included in the court's charge.  (SCR. ps.  13 - 17)   The Court eventually submitted a Charge to the jury (CR. p, 55- 62 et seq.) consisting of two issues, one dealing with Plaintiff's contentions under the ten year statute, and the other under the five year state.  During their deliberations, the jury submitted a question to the court, which apparently was not filed in the court's documents by the judge, nor was the Court's response,   ("Refer to the charge"). (SCR. p. 56).  The jury answered both questions "No".  (Cr. p. 61-62).

After the jury returned its verdict (CR. p. 55 et seq.) both sides moved for judgment.   (Plaintiff, SCR, p. 26 et seq.; Defendant CR p. 63-66; see also SCR. p.22; Plaintiff's Response to Defendant's Motion, SCR, p. 42 et seq).   Subsequently, the court rendered judgment on the jury verdict for the defendant.  (CR. p 77 et seq) Plaintiff filed a Motion for New Trial, (CR. p. 81-83), which was eventually overruled by operation of law.  Plaintiff then timely filed their Notice of Appeal.  (CR. p. 84).

Both sides had pleaded to recover their attorney fees.  During trial, it was agreed that the attorney fees issues would be submitted to the judge by affidavit, and determined by the court after the verdict. (RR Vol 2, p. 15, l. 1 - 10) Plaintiff's counsel filed an affidavit for that purpose, (SCR p. 18 et seq) but the court did not rule on it in view of the verdict,

**b.**      **Factual Background and Summary of the Evidence Presented**.

1.      The property in issue in this case is depicted on a plat, identified as Plaintiff's Exhibit 8, and Defendant's Exhibit 4, in the Reporters Record. (Vol, 6). Also see Appendix No. d.  Unfortunately the Court Reporter made an error in identifying and numbering the exhibits in her List of  Plaintiff's Exhibits;  she misnumbered the exhibits  beginning with Exhibit 3,  but the actual exhibits as found in Vol. 6 of the Reporters Record,  are correctly numbered, and will be referred to as they were marked at the time of their admission.

2.       Defendant's predecessor in title (her grandmother, a Mrs. Seeberger) was deeded a one acre tract in the Miguel Muldoon Survey No. 14,  in Abstract No 76, in Fayette County, Texas.  (Recorded in Vol. 294, beginning at page 479). Subsequently, a .008 acre tract was condemned and taken by the State of Texas for its use as a part of Interstate 10, so that Defendant only had record title to a remainder interest of .092 acres in this survey.  The plaintiff's stipulated that Mrs.

6

Moerbe held record title to this tract. (RR, Vol 2, page 12, l. 16.)

3. A lawyer in Flatonia by the name of Mike Steinhauser acquired two tracts of property in the vicinity of the Seeberger tract from a Chris Houston. (RR Vol. 3, p. 125; Plaintiff's Exhibit 1). He later sold that property to a lady named Arnie Marie Gordon, (RR Vol. 3, p. 125; Plaintiff's Exhibits 2 and 3). Later, Mr. Steinhauser's brother Jeff prepared a deed from Ms. Gordon to Appellant. (RR Vol. 3, p. 134; Plaintiff's Exhibit 4). It turned out that the legal descriptions of two of the tracts acquired by Steinhauser, and later sold to Gordon, and then to Mendez "got flipped" (RR Vol. 3, p. 130, l. 15 - 18).

4. Plaintiff, now Appellant Juana Mendez Valdez, at that time Juana Mendez, purchased the deed from Gordon in 1999 (Plaintiff's Exhibit 4). Ms. Gordon told Ms. Mendez where the four corners of the property she was buying were located. (RR Vol. 3, p. 28; p. 131, l. 14 to p. 134, l. 9) These are the same four corners as depicted on the Hearitage plat (Plaintiff's Exhibit 8) which shows the boundaries of the land that Plaintiff told Mr. Hearitage that she was claiming under her deed. (RR Vol. 3, p. 35, l. 7) Mr. Steinhauser confirmed that he believed that the deed to Ms. Mendez conveyed the property that he had previously conveyed to Ms. Gordon, and that he believed that Ms. Mendez then went into possession of and occupied this property from then until 2014. It turned out that he was wrong; it

7

turned out that it was not the same tract. Mrs. Valdez testified that she and her husband moved onto the property that they were told they had purchased, and have lived there for fourteen years, at the time of the trial. (RR Vol. 3, p. 23, l. 6)

5. Mrs. Valdez testified that she and her husband were looking for property to buy, and they found an old "For Sale" sign (RR Vol 3, p. 25, l. 9 - l. 19) at the location where they later put their first mobile home. At the time that she received the deed from Mrs. Gordon, the property that Plaintiffs now claim was covered with brush and trash, and they began to clear it; they built a patio and moved a trailer home onto the property, in May, 2000. (RR Vol. 3, p. 29 1. 22 - p. 32, l. 9). They paid the City of Flatonia for sewer and water in June, 2000. (RR Vol. 3, p. 31, l. 19 to p. 32, l. 2; RR Vol. 6, Plaintiff's Exhibit 9, p. 000024; RR Vol. 3, p. 41, 1 9 ). They then began to slowly clear the remainder, and eventually put additional mobile homes on the property; the second mobile home was moved onto the property in 2005. (RR Vol. 3, p. 32 1. 10 - p. 41, l.5). There are now four mobile homes and two small sheds on the Seeberger tract portion of the 1.93 acre tract that Plaintiff's claim (RR Vol. 3, p. 40 1. 18), and two other homes on the southern portion of the 1.93 acre tract claimed by Appellants, (fronting on Collins Street) which was not within the Seeberger .092 acre remainder tract.

6. In 2006, Ms. Mendez wanted to put additional mobile homes on her

8

property (RR Vol. 3, p. 34 l. 10 - p. 41, l.5) and wanted to get city utility services. She went to the City of Flatonia and was told that she had to have a survey, in order for the City to annex the property. (RR Vol. 3, p. 34 l. 20 - l. 25; p. 70, l. 13 - 18) After she got the survey, Appendix No. d, the surveyor told her that there was a problem, so she went back to Mr. Steinhauser. (RR Vol. 3, p. 35 l. 20 - p. 36, l.7).

Note also that there are two tracts south of the 1.00 acre Seeberger tract, and two other tracts east and north east of the Seeberger tract, included in the 1.93 acre tract. These were the tracts that were eventually severed out from this trial. Eventually, there were two other mobile homes located on the two southern tracts.

7.    Mr. Steinhauser prepared an affidavit of Use and Possession which she signed. (RR Vol. 3, p. 36 l. 10 - l. 18. He also prepared a new deed which he had Mrs. Gordon sign. (RR Vol. 3, p. 36 l. 19 to l. 25); Plaintiff's Exhibit 5 and 6), and a corroborating affidavit.

8.    Ever since Ms. Mendez purchased the deed from Mrs. Gordon in 1999, she had rendered her property for ad valorem taxes, the Fayette county appraiser had accepted her rendition and had sent her tax notices for her rendered property, which she then paid on a timely basis.   She paid separate taxes for the land and for the mobile homes. (RR Vol. 3, p. 33, l. 8 to l. 21; Plaintiffs Exhibit 7, consisting of 51 pages of tax receipts; (RR Vol. 3, p.41 l. 18). After she signed the

9

affidavit in 2006, Mrs. Gordon signed the deed to her in 2007, and Mr. Steinhauser recorded those documents on May 16, 2007 and sent a copy of them to the tax appraisal district, (RR. Vol,. 3, p. 38, l. 3 - 5; p. 156, l 9.)  and she was thereafter taxed on the 1.93 acre tract (RR. Vol. 3, p. 39, l. 6).  The May 16, 2007  recording date was the date that Plaintiffs used as the starting point for their claim based on the five year statute.

9.      Ms. Mendez and Juan Valdez lived together for for a number of years because he was not yet divorced from his previous wife.  After his divorce became final,  he and Juana Mendez married in 2006.  (RR. Vol 3, p. 26, l. 12; p.)   But they started clearing the property that she bought from Mrs. Gordon in 1999, and he had cleared and assisted her in using, occupying and asserting her title to the property in question since that time, (RR Vol. 3, p. 26;  p. 30 - 32), and they moved their present home on to the property in 2000.  (*Ibid.*). They put it in this location be-cause Mrs. Gordon had pointed out to them where the four corners of the property she sold them, were.  (RR.  Vol 3, p. 28, l. 17 to p. 29, l. 5)   At that time they did not question Ms. Gordon's knowledge or statements as to where her property was.

10.     When they first went on to the property, it was mostly heavy brush (RR Vol. 3, p. 29, l. 24) Mr. Valdez began to clear the brush, by hand.  (*Ibid, p. 30*) It was heavy work.  He eventually cleared enough of the property that they put their

10

first trailer house home on the property; this is the home in which they still live. (*Ibid, p. 32*) As he cleared more of the property they put other homes on it. They now have it fully cleared and they have six homes on it; four of these, together with two sheds, are on the Seeberger tract, (*Ibid*, p 40, l 18 - p. 41. l, 5) All of the Seeberger property is now cleared, open and visible from the street. (RR Vol. 3, p. 53, l. 17 to p, 54, l. 5;) The pictures that were taken during the trial and put into evidence (Plaintiff's Exhibits 10 - 19; R. R. Vol 6, p. 46, l. 14 et seq;) show the state of the property now, but this state has existed for several years, and in the case of the mobile home where they live, as it has looked ever since they moved into it because of his continued maintenance. (RR Vol 3, p. 49, l 17 - 23.) The state of the property has clearly improved every year, due to his work to clear it out, *(Ibid.*, p. 50, l. 5 - 12; p. 51 l 13-24) and keep it cleared.

11. In the Affidavit of Use and Possession, (RR Vol 6, Plaintiffs Exhibit 5) and the new deed from Mrs. Gordon, (Plaintiffs Exhibit 6) they claimed the title to a 1.93 acre tract that Mr. Hearitage had measured out for them, *(Ibid.* p. 35 1.7; p. 37, l. 14) and they paid the taxes on that tract every year. *(Ibid*, p. 39 1. 6) When the surveyor told her that there was a problem with the deed that she had originally received from Ms. Gordon, compared to the land that she was occupying, she went back to Mr. Steinhauser. ((*Ibid*, p. 35 1. 20 - p. 36, l.7). He then prepared the

11

Affidavit that she signed, and the new deed that Ms. Gordon signed.

12. Between 1999 and March, 2012 no one ever contested the Plaintiff's claim to the property. (RR Vol. 3, p. 43) On March 1, 2012 Mrs. Moerbe filed a forcible entry lawsuit in the Justice of the Peace court of Fayette county. (RR Vol. 6, Defendant's Exhibit 32.) This was the first and only such suit that had ever been filed against them. (RR Vol. 3, p. 44 1. 5)

13. Timothy Hearitage is a licensed state land surveyor and a registered professional surveyor. (RR. Vol. 3, p. 110). He prepared the plat that was identified as Plaintiff's Exhibit 8 and Defendant's Exhibit 4. (*Ibid*. p. 110, l. 24). He did that work in February 2006, (Ibid, p. 111, l. 16), and at that time the land that she was claiming, between Collins Street and Interstate 10, was mostly cleared. (*Ibid* p. 112, l. 11-12). The area that was mostly cleared was the Seeberger tract; (*Ibid* p. 121, l. 8-10); the 0.223 acre tract that he shows on the plat was not cleared, (*Ibid*. p. 121, l. 24. His primary task was to locate on the ground the property described in the deed from Gordon to Mendez; he identified it as the 0.223 acre tract located on the plat south of the Seeberger tract. (*Ibid*, p. 113, 114)

15. Michael Steinhauser is a lawyer in Fayette County. (*Ibid*, p. 123) He testified that he acquired three tracts of land from Chris Houston, in 1992, (*Ibid*, p. 124 - 131) and then he prepared the deed from him and his wife to Mrs. Gordon;

12

he said that he believed his brother, (now Judge Jeff Steinhauser of the 155th Judicial District) who was practicing with him at the time, prepared the deed from Mrs. Gordon to Mrs. Mendez, now Valdez, in 1999. (*Ibid,* p. 134, l. 16 - 21)   He testified that the land descriptions in this area of Flatonia are and were very confusing and ambiguous, and that he did not do any particular investigation into the descriptions or the location on the ground of the land that he acquired from Houston and later sold to Gordon.   Although Steinhauser did look at some title company records, no one ever asked for or got a title insurance policy.   (*Ibid*, p. 124 - 131); he stated that he did not think that Mrs. Gordon, or anyone, could have known where the property was on the ground without a survey (*Ibi*d. p. 155, l. 14) Later, Mrs. Valdez came in to see about getting the property that she bought annexed by the City of Flatonia so that she could then get city services on the property.  The City told her she had to have a survey, Mr. Steinhauser had her get Mr. Hearitage to do the survey, and then they discovered that the property that she was actually using was not the same as that conveyed to her by the deed from Gordon. (*Ibid*, p. 139) In his testimony, he explained about the five and ten year statutes of limitations, what was needed under those statutes to perfect adverse possession title, and what he did in order to accomplish that.  (*Ibid*, p. 135, l. 25 to 142, l. 11)

13

Steinhauser testified that he undertook "to do what lawyers do", which was to cure the title defect that she had with respect to the property that she was occupying. (*Ibid*, p. 158, l. 7) He prepared an affidavit of Use and Occupancy, (*Ibid,* p. 139, l. 25 - p. 140, l. 2 and a Deed without Warranty, (p. 141, l. 25; p. 156, l 5 - 9)) and had Mrs. Gordon sign the deed. He then filed these documents for record and submitted it to the tax office. (*Ibid*, p. 156, l 5 - 9) Filing these documents of record in the deed records of Fayette County gave notice to all of the world of her claim of possession, both adverse and under the deed. (*(Ibid*, p. 140, l. 13- 23)

He admitted that he took the survey that Hearitage had prepared and calculated the determination of acreage that he used in the affidavit of Use and Possession. (*(Ibid*, p. 139, l. 25; p. 141 l. 17 -142, l. 11) He admitted that he did make a mistake in the language of the affidavit with regard to the size of the tract that was taxed to Mrs. Gordon, which should have been only 0.493, rather than 1.93 acres. (*(Ibid*, p. 141, l. 16) However, he denied that he prepared this affidavit falsely, conspiratorially or with any motive other than to cure the client's title defect, which is "what lawyer's do". (*Ibid,* p. 158, l. 7)

17. Richard Moring is the chief appraiser for the Fayette County Tax Tax Appraisal District. (RR Vol 4, p. 6, l. 1). Mr. Moring's testimony essentially confirmed that the tax records of the Tax Appraisal District of Fayette County were

14

not accurate, and had not been so for some time, (RR. Vol. 4, p. 16, l 14) and that they had inappropriately taxed the Seeberger tract on the basis that it included more property than it actually did. (RR, Vol, 4, p 9, l. 1) He also confirmed that his office began to tax Mrs. Valdez for the 1.93 acre tract that she claimed in her affidavit of Use and Occupancy after they got the copy of the affidavit and deed to that, from Mike Steinhauser, in 2007, (RR, Vol 4, p. 10, l. 1) and he admitted that they had previously taxed Mrs. Valdez on a 0.493 acre tract, and they just changed the acreage and not the account number. (RR. Vol. 4, p. 10, l.5). He then admitted that Fayette County had actually been taxing the same property twice. (RR. Vol 4, p. 10, l16.

He confirmed that when Mrs. Arnie Gordon gave Mrs. Mendez a deed in 1999, that the tax office just transferred that account from Mrs. Gordon's name to Mrs. Mendez and continued the same tax number on the account, ( RR. Vol. 4, p. 11, l. 12), and then he confirmed that Mrs. Valdez has paid applicable ad valorem taxes on the real estate and the mobile homes on the property each year since 1999. The parties then stipulated that Mrs. Valdez had paid taxes on the property in question for each year since she moved on it. ((*Ibid* p. 13, l.21 et seq.)

18.    Appellant Juana Valdez testified that she was not good with "the papers and measurements". (RR Vol 3, p. 27, l. 25 to p. 28, l. 1.) She only knew

where the property was on the ground because Mrs. Gordon had showed her "the four corners", (*Ibid* p. 28, l. 17). She testified that she and her husband had claimed what turned out to be the entirety of the 1.93 acre tract from the time that they moved onto it because of what Mrs. Gordon had told them. And that was what they told the surveyor. (*Ibid*. p. 35, l. 4 - 7) She said that she understood that the affidavit and new deed that Mr. Steinhauser prepared for them would show that they were the "proprietors of the four corners". (*Ibid* p. 37, 114, 15) She told Mr. Trefny that she did not know that anyone name Seeberger ever had any claim to the property ( (*Ibid*. p. 78, l. 6 - 15); she said that during the time that they were on the property they were not trying to take it from some one else because they believed that they were the actual "proprietors" (of the tract involved). (*Ibid*. p. 78, l. 22.23). She said that during the time that they had been living on the property that no one had ever asserted any claim against them (*Ibid*. p. 43, l. 9 ) or filed any lawsuit over the title (*Ibid*. p. 43, l. 12) until Mrs. Moerbe filed on March 1, 2013 (*Ibid*. p. 44, l. 15).

19. Defendant, Appellee Melody Mueller Moerbe testified that she is a legal secretary in Brenham (RR, Vol. 4 p. 37, l. 21 - 25), her mother's maiden name was Seeberger (*Ibid*, p. 19, l. 1), her grandmother was deeded a 1.0 acre tract by a man named Collins in satisfaction of a debt (*Ibid*, p. 20, l. 6 et seq), that her mother inherited this tract in 1974, and on her death in 1992, she and her uncle inherited the

16

property, and she bought her uncle's ½ interest in 2011. (*Ibid*, p. 20 , l. 6 et seq.) Her grandmother sold a 0.008 tract to the State for a part of Interstate Highway 10, (*Ibid*, p. 20, l. 20).

She stated that she listed the property for one year with a realtor, Hart Land and Realty, in 1995, and then again with Carol Werner, in 2001. (*Ibid*, p. 21, l. 15 - 24). After her mother died, the responsibility for the property shifted to her; she paid the taxes. She had a relative, Doug Arnim, who looked at it and he and her uncle once walked the property in 1998. (*Ibid*, p. 22). They had family reunions annually in Schulenberg, and she would drive by on IH 10. She got a letter from the City of Flatonia about the property in 2006, but other than returning a form, did nothing about it then. She remarried, and her husband went down IH 10 frequently, and he would look at the property. She had a folder of her mother's with the deed and a copy of a plat from the state. They signed an oil lease in 2012. (Ibid, p. 22 - 25).

She said that she did not go on the property before 1992. She paid the taxes for her mother, and she had seen an image of the property at the tax office; she knew the property was within the area surrounded by Collins, Walnut and Hackberry Streets, and was just past the Patel motel on IH 10. The first time that she went by the property to notice it as hers was probably in the late 1990's. (*Ibid*, p. 31, 32)

17

She got the tax notices. There was never any mention of any improvements or mobile homes, on her tax notices. She never protested any of the tax values assessed. *(Ibid*. p. 35)

She did not know Arnie Marie Gordon, and did not know that she had ever claimed the property. Between 1992 and 2009 she had no knowledge that anyone was occupying or claiming the property. She claimed that she did not know exactly where it was, or where to look, but she did know it fronted 75 varas on the Interstate, just past the motel. *(Ibid*, p. 35 - 43). Then, in 2009, her husband went by, saw the mobile home and shed on the property, (RR Vol 4, p. 43, l. 16 - 23) and they tried to contact Valdez, left a card but never had any contact, and so eventually, in 2012, her employer, Mr. Betts, filed the Forcible Entry and Detainer suit for her. *(Ibid*, p. 41, l. 22). She agreed that was the first and only lawsuit that they had ever filed to attempt to get the property back. *(Ibid*, p. 42, l. 3 - 25)

## SUMMARY OF THE ARGUMENT

Appellants, as Plaintiffs below, assert that, as factually set forth above, they have established perfected title to the 1.93 acre tract that they claim and which was described in the Affidavit of Use and Possession that Mr. Mike Steinhauser prepared in 2006, under both the five and the ten year statutes of limitations. (Art. 16.025 and 16.026, Texas Civil Practice and Remedies Code).

18

It is undisputed, and they have established as a matter of law that between June, 2000, and February 28, 2012, they were in peaceable and adverse possession of the entire 1.93 acre tract, and Mrs. Moerbe, who claims the record title, did not file any lawsuit to dispossess them in any way. They claim that each element of the statutory requirements to establish title by adverse possession under these statutes are fulfilled and established as a matter of law under the record in this case.

Appellants also contend that they have established undisputed title under the five year statute, in addition to meeting the other elements required by this statute; the forcible entry lawsuit that Mrs. Moerbe filed on March 1, 2012 fails to interrupt their possession, since the Justice court did not have any jurisdiction to entertain such a claim, and thus it was a nullity. Thus they claim that they established their claim under this statute as a matter of law, and the judgment should be reversed and rendered, or alternatively, reversed and remanded for the trial court to render a proper judgment vesting title in Appellants, and to allow the trial court to determine whether to allow attorney fees or not.

In addition, Appellants claim that the trial court committed reversible error by not properly charging the jury on the law regarding the efficacy of the justice court lawsuit, and that the jury was thereby misled into believing that the justice court filing was a sufficient interruption of possession as to terminate the time require-

ments. In addition, the charge failed to adequately instruct the jury as to the extent of use of the property required to meet the statutory requirement. Consequently, the judgment should be reversed and remanded, with the trial court being properly instructed by this court as to what it should instruct the jury next time.

## ARGUMENT

### a. Standard of Review

In attacking an adverse finding to an issue upon which he or she had the burden of proof, the appellant must demonstrate on appeal that the evidence conclusively established all vital facts in support of the issue. *Ritchey v. Crawford*, 734 S. W. 2d 85, 86 (Tex. App. - Houston, [1st Dist.] 1987, no writ.)

In reviewing a "no evidence" point of error where the party has the burden of proof, the reviewing court must first examine the record for evidence that supports the finding while ignoring all evidence to the contrary. If there is no evidence to support the finding, the court must then further examine the entire record to see if the contrary proposition is established as a matter of law. *Holley v. Watts*, 629 S. W. 694, 696 (Tex.1982); *McGalliard v. Kuhlmann*, 722 S. W. 2d 694, 696-697 (Tex. 1986); *Mata v. Mata*, 710 S. W. 2d 756, 757-8 ( Tex. App. - Corpus Christi, 1986, no wr.)

In reviewing questions of "factual insufficiency", regardless of who has the

burden of proof on the issue, the appellate court must consider and weigh all of the evidence, both that in support of and contrary to the challenged finding. The finding must be upheld unless the court finds that the evidence is so weak or the finding is so against the great weight and preponderance of the evidence as to be manifestly erroneous and unjust. *Pool v. Ford Motor Co.*, 715 S. W. 2d 629, 635 (Tex. 1986); *In Re King's Estate,* 244 S. W. 2d 660, 662 (Tex. 1951)

If there is any evidence of probative force to support the finding, the no evidence point must be overruled and the finding upheld. *In Re King's Estate*, 244 S. W. 2d 660, 661 (Tex. 1951); *King v. Bauer,* 688 S. W. 2d 845, 846 (Tex. 1985).

A "no evidence" point must be sustained when the record discloses one of the following:

1) A complete absence of evidence of a vital fact
2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact;
3) the evidence offered to prove a vital fact is no more than a scintilla of evidence, or
4) the evidence establishes conclusively the opposite of the vital fact.

*Commonwealth Lloyd's Insurance Co. v. Thomas*, 678 S. W. 2d 278, 288 (Tex. App. - Fort Worth 1984, wr. ref. n. r. e.); Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex. Law Review, 361 (1960). Recent decisions by the Texas Supreme Court make it clear that if an appellate court elects to set aside a

21

judgment based upon a jury verdict, that the court must articulate its reasons for doing so with reasonable specificity and legally sound justification. *In Re Toyota Motor Sales U. S. A., Inc.*. 407 S. W. 3d 746 (Tex. 2013); *In Re United Scaffolding, Inc*. 377S. W. 3d 685, (Tex. 2012); *In Re Columbia Medical Center of Los Colinas*, 290 S. W 3d. 204 (Tex. 2009) It is Appellant's intent, by the factual recitations in this brief, to provide this appellate court with the fuel fodder to be able so comply with these requirements of appellate review.

> **b.** **Appellants established good title to the 1.93 acre tract under the ten year statute as a matter of law.**

Special Issue No. 1 inquired as to whether the Appellants had established adverse possession under the ten year statute. The jury wrongfully answered "no". Appellants assert that the jury was laboring under two misconceptions; the jury did not believe that Appellants had given legal notice of their claim, and that they had not possessed and occupied all of the tract sufficiently. These were mistakes of legal effect, and should have and could have been cured by a more appropriate instruction from the court.

Factually, Appellants assert that each element of the requirements of the statute had been established by their evidence, and perhaps more importantly, had not been disproved or even contradicted by Appellee by even a scintilla of evidence. While, in large part, most of Appellant's case has been established by her own

22

testimony, the law is that when the testimony of an interested party is clear, direct, positive, otherwise credible and free from contradiction and inconsistencies and could have been readily controverted, then it can be given conclusive effect. Texas Rules of Civil Procedure 166a ( c), *Galvan v. Public Utilities Board,* 778 S. W. 2d 580 (Tex. App. - Corpus Christi, 1989, no wr. hist.); see also *Westerlund v. Naaman,* 833 S. W. 2d 725, (Tex. App. - Houston [1st Dist.], 1992 , no wr. hist.

See also Plaintiff's Brief In Support of the Motion for Judgment Notwith-standing the Verdict, (Appendix No. e) and the following cases:

In *Anchor Casualty Company v. Bowers*, 393 S. W. 2d 168, (Tex. 1965) the Supreme Court said:

> "Recently we stated that the uncontradicted testimony of an interested witness cannot be considered as doing more than raising an issue of fact. An exception is made when the testimony of the interested witness is clear, direct, and positive, and there are no circumstances in evidence tending to discredit or impeach such testimony. *Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S. W. 2d 41(Tex. 1965)"

In addition, the Court held in *Great American Reserve* that the exception to the rule is especially true when the opposite party has the means and opportunity of disproving the testimony if it is not true, and fails to do so, citing *Owens Development Co. v Calvert,* 157 Tex. 212, 302 S. W. 2d 640 (1957) and *McQuire v.*

23

*City of Dallas*, 141 Tex. 170, 170 S. W. 2d 722 (1943).

While admittedly Mr. Trefny, on cross, attempted to impeach Mrs. Valdez, discredit her, and establish crack's in her testimony, he was not successful with regard to any essential or critical part of her testimony, and only accentuated the difficulty of a person with language deficits in court. She may have been mistaken about the "black jack" tree, but how would she know that? So what? And how would she know the legal meaning or effect of what the lawyer put in the affidavit, other than what he told her about that?

It is undisputed that Appellants went on the property in 1999 after they got the deed from Mrs. Gordon, and that they moved a mobile home on the property no later than mid 2000. Defendant cannot dispute this; she admittedly did not know whether they did or not, but the records of the tax office and the City of Flatonia corroborate this testimony. Plaintiff's were on the property because they thought it was theirs, based on what Mrs. Gordon had told them as to where it was located, and based on the old "For Sale" sign which they found, and from which they located Mrs. Gordon; undoubtedly this sign had been placed there by the realtor that defendant had retained to try to sell the property in 1995. Incidentally, Defendant testified that she hired another realtor and tried to sell it in 2001; either that fact, or the date thereof, is not credible because either the realtor or the defendant would have seen the Plaintiff's

24

mobile home, patio and driveway at that time and known something was wrong and said or done something. Or, perhaps, they just ignored that knowledge.

The jury was charged as follows with regard to the statutory required elements of establishing title, and the evidence, as shown by the recitation and summary above is as follows: (See Court's charge, (CR. p. 55 et seq.; also RR Vol. 5, p. 6 et seq. and Appendix No. b)

(1) "Peaceable possession" means the possession, use and enjoyment of real property that is continuous and is not interrupted by an adverse suit to recover the property.

There is no evidence that creates any issue of fact over this element. Appellant's evidence is clear, positive, and direct, and there were no circumstances in evidence to discredit or impeach their contention that they were in possession for the entire fourteen years prior to suit, and that fact is corroborated by the tax records and the City of Flatonia records. Appellee admitted that no suit to interrupt possession during this time frame was filed.

(2) "Adverse possession" means an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person.

There is no evidence that creates any issue of fact over this element.

25

Again, Appellants evidence is clear, positive, and direct, and there were no circumstances in evidence to discredit or impeach their contention that they went into possession initially claiming under the first deed from Mrs. Gordon, believing that they were occupying property within the "four corners" as described by Ms. Gordon, and relying on the deed that they had obtained conveying to them that property. They clearly established an actual and visible appropriation of the four corners area, and have continued to be there ever since.

(3)    "Exclusive possession" means an exclusive dominion over the land and an appropriation of it to Juan and Juana Valdez's use and benefit to the exclusion of any other person.

There is no evidence that creates any issue of fact over this element. The jury may have believed that the Appellants did not use all of the property at the outset of their occupancy, and consequently did not have exclusive possession of all of the 0.992 acre tract from the beginning. That is not the law, and under the facts of this case, the use of so much of it as they could over the period of time that it took to clear it and put it to other use was sufficient.

The case law is clear that a person claiming adverse possession of a tract is not required to use the entirety of the tract the entire time, but "only so much of it as is useable and adaptable to the circumstances" (the entire time). In *Doyle v. Ellis*, 549

26

S. W. 2d 62, (Tex. Civ. App. - Waco, 1977, no wr. hist.) the Waco Court of Appeals restated the law as "A limitation claimant under Article 5510 (now CPRC §16.026) is only required to use the land for a purpose to which it is adaptable and capable of being used. *Wallis v. Long*, 75 S. W. 2d. 138, 142 (Te. Civ. App. - Galveston. 1934, wr. Ref.)" This case has been followed on numerous occasions; *Rudy v. Hardy*, 610 S W. 2d 565, (Tex. App. - Waco, 1980); *De Alonzo v. Solis*, 709 S. W. 2d 690, (Tex. App. - San Antonio, 1985); *The Heirs of Berry and Sarah Simmons v. Bouligny*, (Tex. App. - Corpus Christi, 2010 Cause No. 13-09-00269-CV; apparently unpublished).

(4) "Claim of right" means that they were using and enjoying the property with the intent to claim the land as their own and to hold it for themselves to the exclusion of others.

There is no evidence that creates any issue of fact over this element Appellant clearly testified, in response to counsel's cross, that they thought that they were the "proprietors" and that they were claiming under the deed that they had received and that no one else had any right to the property. Appellant's testimony about this was clear, direct and positive, and there is no evidence tending to impeach or discredit her testimony on this point.

(5) "actual and visible, and that it was of such character as to indicate

27

unmistakably that Juan and Juana Valdez were claiming exclusive ownership as their own, which was hostile to the claim of any record owner."

There is no evidence that creates any issue of fact over this element. Again, Appellants evidence is clear, positive, and direct, and there were no circumstances in evidence to discredit or impeach their contention that thir usage was actual and visible. While Defendant did testify that she did not see or know about the Plaintiff's occupancy before 2009, her argument was not that it was not visible, but that she didn't know where to look. That is not sufficient under all the case law. And all of the evidence, including the testimony of the surveyor and the photographs, clearly establish that the first mobile home was clearly visible to an owner who was diligently inspecting his own property, the boundaries of which he or she is bound to know. Compare *Griswold v Comer*, 161 S. W. 423, post, and *Brownson v. Scanlon*, 59 Tex. 222, 226 (1883), post.

(6)     "Hostile".

There is no evidence that creates any issue of fact over this element. It is difficult to imagine anything more hostile, in this context, than someone moving a mobile home on and then living in the same, on your property.

In *Griswold v Comer*, 161 S. W. 423, 427 (Tex. Civ. App. - Galveston, 1913, modified on appeal as to the extent of the interest involved, Tex. Com. App. -

Sec. A, opinion adopted, 209 S. W. 139), the Court held that "fencing the land and using it for a pasture for live stock, such use being continuous and exclusive and without dispute visible and notorious" was sufficient to establish adverse possession. The court said "certainly the facts show that the slightest diligence on the part of appellants would have enabled them to learn of this adverse claim and its active assertion". Clearly moving a mobile home on the property and living there for a period of 14 years is more visible, open, notorious, hostile and adverse than merely fencing the property.

In the old case of *Brownson v. Scanlon*, 59 Tex. 222, 226 (1883), the Supreme Court held that a house and other improvements on the property was sufficiently visible and notorious to constitute adverse possession; the court said that the party claiming a superior title would not be excused for ignorance of the particular claim of right, because he is not in the condition of an ordinary and casual observer, but must diligently look to his own interests, know the boundaries of his own land, and ascertain the extent, meaning and locality of any settlement made within them without his authority. See also *Stafford v. Jackson*, 687 S. W. 2d 784 Tex. App. - Houston [14th Dist}, no wr. hist.)

To the extent that further evidence of notice is required, not only was the filing of the affidavit and second deed notice to all the world, but Hearitage says the

29

Seeberger tract was cleared in February, 2006 so that Moerbe could easily have seen that someone had put several mobile homes and sheds on the property, and was living on it, without her permission

Appellants filed a Motion for Judgment Not Withstanding the Verdict. (SCR. p. 26 - 41; Appendix No. e)   In that Motion, appropriate legal authority for all these issues was presented to the trial court.  Such Motion is included in the appendix, and all legal authorities therein cited are incorporated herewith for all purposes, and for this Court.

**c.     Appellants established good title to the 1.93  acre tract under the five year statute as a matter of law.**

As set forth above, each of the requisite elements of the statute of limitations statutes was clearly met by the evidence presented, and the lack of evidence by the defendant, as to both statutes.   The argument presented above by Appellant applies equally to the Appellant's position under the five year statute. Again, Appellants evidence is clear, positive, and direct, and there were no circumstances in evidence to discredit or impeach any of their contentions, and it was corroborated and partially stipulated by the defendant that Plaintiffs had paid all taxes for all of the years involved, so that element was also satisfied.  (RR Vol 1, p. 7, l. 22; Vol. 6,  Plaintiff's Exhibit No 7)

The jury obviously did not know, understand or appreciate Mr. Steinhauser's

testimony that the effect of an affidavit of Use and Possession and a deed is legal notice to all of the world. That is clearly the law of this state. Even though, due to her lack of diligence, Mrs. Moerbe may not have had actual notice of the Plaintiff's occupancy and claim before 2007, recording those documents gave her all of the notice that is required, and since the Plaintiffs had been in possession since 1999, that notice related back to the entirety of their occupancy. Texas Property Code §13.02 establishes that the filing of the affidavit and new deed from Gordon in 2006 and 2007 are notice to the defendant as a matter of law.

The filing of the Forcible Entry and Detainer Suit was a non entity. The County Court should have granted Appellant's Plea to the Jurisdiction and dismissed that case; the non lawyer judge just abated it. But the case law is clear that that case had no determinative effect, and the trial court in this case should have been more definitive in his instruction to the jury, as requested by Appellant. (RR, Vol. 4, p. 59, l. 12 et seq.; p. 69, l. 14- 24). The instruction given (CR. p. 55 et seq. was only partially correct, see also RR. Vol 4, p. 63, l. 5 et seq.)

The Appellant's Brief that was filed in the County Court, in support of the Plea to the Jurisdiction there, and which was provided to Judge Beck for his review during this trial, (Appendix No. f) contained extensive case law regarding the effect of the filing of forcible entry and detainer suit. The appropriate case law now is:

31

The Justice Court only has jurisdiction to determine the right to possession, and does not have jurisdiction to determine title; the issue of title can only be determined in a district court. TRCP Rule 746; Sec. 24.001 et seq., Texas Property Code; *Blaylock v. Riser*, 354 S. W. 2d 134, 136, (Tex. 1962); Sec. 27.031, Government Code. Of course, if the Justice Court does not have jurisdiction over the case, then neither does the County Court, on appeal. *Rice v. Pinney*, 51 S. W. 3d 705, 709 (Tex.App. - Dallas, 2001, no pet.)

By establishing that they do in fact have title to the property, even if based on adverse possession, then Appellants claim of title is legally held to be superior to the claim of the Appellee, even though the Appellee has a chain of record title. Tex, Civ. Prac. and Remedies Code §16.030 (a); *Burton's Heirs v. Carroll*, 72 S. W. 582 (Tex. 1903). If Appellants do in fact have valid title to the property, whether based on a deed or based on an adverse possession claim, then their title gives them the superior right to possession, and the justice court would have erred in awarding possession to the Plaintiff there, Appellee here. And Appellants are entitled to a judgment under trespass to try title establishing and vesting them with that title, in the District Court.

In a forcible entry and detainer action, a plaintiff is not required to prove title but is only required to show sufficient evidence of ownership to demonstrate a

superior right to immediate possession. If the question of title is intertwined with the issue of possession, then possession may not be adjudicated without first determining title. *Villalon v. Bank One*, 176 S. W. 3d 66, 70 (Tex. App. - Houston [1st Dist.], 2004, pet den.); *Morris v. American Home Mort. Servicing, Inc.*, 360 S. W. 3rd 32, 34, (Tex. App. - Houston [1st Dist] 2011, no pet); *Lopez v. Sulak*, 76 S. W. 3rd 597, 605 (Tex. App. - Corpus Christi 2002, no pet.). If the right to possession cannot be determined without first determining actual ownership of the property then the Justice Court does not have jurisdiction. *Padilla v. NCJ Dev., Inc.* 218 S. W. 3d 811, 815, (Tex. App. - El Paso, 2007, pet dism); *Aguilar v. Weber*, 72 S. W. 3d 729, 732 (Tex. App. - Waco 2002 , no pet); *Dormady v. Dinero Land & Cattle Co.*, 61 S. W. 3d 555, 557, ( Tex. App. - San Antonio, 2001 pet. dism.); *Gentry v. Marburger*, 596 S. W. 2d 201, 203 (Tex. App. - Houston [1st Dist] 1980, wr ref n r e.).

In the latter case, *Gentry v. Marburger*, the court held that when the right of possession requires determination of the validity of an adverse possession claim, the court will not have jurisdiction. See also O'Connor's Texas Causes of Action, p. 434, 2013 Ed. In *Ward v. Malone*, 115 S. W 3d 267, at page 270, the Corpus Christi Court of Appeals said that "One indication that a justice court, and county court on appeal, is called on to adjudicate title to real estate in a forcible detainer case - and thus exceed its jurisdiction - is when a landlord-tenant relationship is lacking", citing

*Aguilar v. Weber*, cited above and other cases, and holding that the justice court and county court did not have jurisdiction in that instance.

See also one of the cases presented to the County Court by Appellee's counsel, *Sparkman v. State*, 968 S. W. 2d 373, (Tex. App. - Tyler, 1997, wr. ref.) where the court held that whether there was an issue of title in the justice court was not shown.

**d.      The Court erred in failing to provide the jury with adequate and appropriate jury instructions**.

As set forth and argued above, the trial court charged the jury with inadequate and incomplete instructions regarding the effect and efficacy of the justice court case, and with respect to the required amount of use that claimants must put the property to to establish use, possession, and exclusivity.  The trial court had another chance at that when the jury sent in its note, and he failed to provide them with proper instructions then.

Appellants assert that they proved their case as a matter of law, and that there is and was " no evidence" which would support the jury verdict or prevent the court from finding for Appellants as a matter of law, but should this court conclude that the Appellant's have not established their claim to title as a matter of law, then this error by the trial court requires a remand and a new trial.

WHEREFORE PREMISES CONSIDERED, Appellants pray that this  Court reverse and render the Judgment of the trial court, grant judgment to Appellant for

34

title to the property in issue, or alternatively remand this case to the trial court for a

new trial, or the entry of a proper judgment, and for general relief at law and in

equity.

Respectfully submitted,


Law Office of O. F. Jones III
109 W. Santa Rosa
P. O. Drawer E
Victoria, Texas 77902
(361) 573-6381
(361) 576-4507(fax)



By:___/s/   O. F. Jones III_____
  O. F. Jones III
  State Bar No. 10974000


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing **Brief of Appellant** has been served on Appellee, by and through her Attorney of Record, Mr. Mike Trefny, Attorney at Law, **P. O. Box 458,   Columbus, Texas   78934** via First Class Mail on this __23___ day of January, 2015.

___/s/ O. F. Jones III_____
  O. F. Jones III



## Certificate of Word Count

Pursuant to Rule 9.4 (l)(2)(B), Appellant certifies that the total word court of all of the contents of this Appellant's Brief is 9,858 words.

__/s/  O. F. Jones III_____
  O. F. Jones III

# APPENDIX

(NB: These documents did not scan properly. Please refer to the original exhibits for accuracy.)

APPENDIX A

37

Judgment

**CAUSE NO. 2013V-052**

| | | |
|---|---|---|
| **JUANA MENDEZ VALDEZ** | § | **IN THE DISTRICT COURT** |
| **ET VIR JUAN VALDEZ** | § | |
| | § | |
| **V.** | § | **155th JUDICIAL DISTRICT** |
| | § | |
| | § | |
| **MELODY MUELLER MOERBE** | § | **FAYETTE COUNTY, TEXAS** |

<u>**FINAL JUDGMENT**</u>

BE IT REMEMBERED that on May 27, 2014, this case was called for trial and the Plaintiffs, JUANA MENDEZ VALDEZ AND JUAN VALDEZ, appeared by and through their attorney of record and announced ready for trial and the Defendant/Counter-Plaintiff, MELODY MUELLER MOERBE, appeared by and through her attorney of record and announced ready for

trial; and a jury was duly accepted, impaneled and sworn. The Jury returned its verdict after hearing the evidence, arguments of counsel and the Court's instructions and after receiving the Court's Charge. The jury answered "No" to Questions Nos. 1 and 2, finding that the Plaintiffs have not adversely possessed a 0.992 acre tract of land made the basis of this suit from Defendant/Counter-Plaintiff, MELODY MUELLER MOERBE, who the parties had stipulated in a written stipulation filed with the Court to be the record owner of said tract. Said land is more fully described in a deed from R.G. SEEBERGER, JR. to MELODY MUELLER MOERBE (formerly known as MELODY LOU ZETTEL), dated December 13, 2011 and filed for record in Volume 1591, Page 55, Official Records of Fayette County, Texas (said 0.992 acre tract herein referred to as the "Property in Dispute"), and also being a part of that 1.93 acre tract claimed by Plaintiffs under a Deed Without Warranty, from ARNIE MARIE GORDON to JUANA MENDEZ, dated May 4, 2007, and filed for record in Volume 1397, Page 274, Official Records of Fayette County, Texas (herein the "Gordon Deed Without Warranty").

The Jury having found that the Plaintiff failed to establish title by Adverse Possession, the Court finds that the Defendant/Counter-Plaintiff, MELODY MUELLER MOERBE, is entitled to Judgment quieting title to the Property in Dispute and removing the cloud of title on the Property in Dispute on account of Plaintiffs' claims and the Gordon Deed Without Warranty. and that MELODY MUELLER MOERBE is the sole owner of the Property in Dispute with full and indefeasible title. The Court further finds that the Defendant/Counter-Plaintiff, MELODY MUELLER MOERBE, is entitled to be restored to full possession of the Property in Dispute, subject only to the stipulation read into the record in this case that Plaintiff shall have one (I) year from the date of entry of the Judgment in this case to remove all of her personal property situated on the Property in Dispute, including but not limited to trailer houses, sheds, fences and other temporary improvements, but in the event such is not timely removed, then at that time such personal property shall become the property of MELODY MUELLER MOERBE, at her election.

The Court grants the Defendant/Counter-Plaintiff, MELODY MUELLER MOERBE's Motion for a Directed Verdict Against Plaintiffs' Declaratory Judgment Action seeking to quiet title to the Property in Dispute to Plaintiffs, and Plaintiff's claims are dismissed and Plaintiff shall take nothing by such claims. It is therefore

ORDERED that title to the Property in Dispute is vested in MELODY MUELLER MOERBE, that MELODY MUELLER MOERBE has clear and indefeasible title to the Property in Dispute, being said 0.992 acre tract of land described in that deed from R.G. SEEBERGER, JR. to MELODY MUELLER MOERBE (formerly known as MELODY LOU ZETTEL), dated December 13, 2011 and filed for record in Volume 1591, Page 55, Official Records of Fayette County, Texas, and that the cloud on the title to the Property in Dispute by the claims of Juana Mendez Valdez, et vir Juan Valdez for adverse possession or ownership under the Gordon Deed Without Warranty, are in all things removed.  It is further

ORDERED that MELODY MUELLER MOERBE is the sole party entitled possession of the property in Dispute in accordance with her full legal title, subject only to the conditions that Plaintiff shall have one (1) year from the date of entry of the Judgment in this case to remove all of her personal property situation on the Property in Dispute, including but not limited to trailer houses, sheds, fences, and other temporary improvements, and in the event such is not timely removed, then at that time such personal property shall become the property of MELODY MUELLER MOERBE, at her election.  It is futher

ORDERED that MELODY MUELLER MOERBE'S claims for attorney's fees are denied. It is further

ORDERED that Plaintiff/Counter-Defendants, JUANA MENDEZ VALDEZ and JUAN VALDEZ, take nothing on all other claims against MELODY MUELLER MOERBE, which are denied.   It is further

ORDERED that MELODY MUELLER MOERBE shall be entitled to all writs and process allowed by law to enforce this judgment and to restore her to full possession of the Property in Disputem, upon the conditions contained in this judgment.  It is futther

ORDERED that all costs are taxed against the Plaintiff's, for which let execution issues if not timely paid.  It is further

ORDERED this judgment finally disposes of all claims with regard to Plaintiff/Counter-Defendants JUANA MENDEZ VALDEZ and JUAN VALDEZ, and Defendant/Counter-Plaintiff MELODY MUELLER MOERBE.  All claims by Plaintiffs, JUANA MENDEZ VALDEZ and JUAN VALDEZ are hereby severed and shall proceed under a separate cause number to be

40

established by the Clerk of the Court, and this judgment is final and appealable.

SIGNED on this the 15 day of    August              ,2014.

Dan Beck, Distnct Judge Presiding

___      M

AUG 15 2014

4IAA#~/II~A ~v~ä/

Clerk D1stric~'Court, Fayette County, Texas

-        /iJ4~~ti4't6f~.~Deputy

Approved as to form:

By:

MICHAEL T. TREFNY

Texas Bar No. 20207650

GATES STEIN GILLESPIE & TREFNY

P0 Box 458

415 Spring Street

Colu

APPENDIX B

COURTS CHARGE AND VERDICT

42

CAUSE NO. 3592~

| MELODY MUELLER MOERBE | § | IN THE |
| | § | |
| V. | § | |
| | § | |
| JUANA MENDEZ VALDEZ | § | FAYETTE COUNTY, TEXAS |
| ET VIR JUAN VALDEZ | § | |

**CHARGE OF THE COURT**

MEMBERS OF THE JURY:

After the closing arguments, you will go to the jury room to decide the case, answer the questions that are attached, and reach a verdict You may discuss the case with other jurors only when you are all together in the jury room.

Remember my previous instructions: Do not discuss the case with anyone else, either in

43

person or by any other means. Do not do any independent investigation about the case or conduct any research. Do not look up any words in dictionaries or on the Internet. Do not post information about the case on the Internet. Do not share any special knowledge or experiences with the other jurors. Do not use your phone or other electronic device during your deliberations for any reason.

Any notes you have taken are for your own personal use. You may take your notes back into the jury room and consult them during deliberations, but. do not show or read your notes to your fellow jurors during your deliberations. Your notes are not evidence. Each of you should rely on your independent recollection of the evidence and not be influenced by the fact that another juror has or has not taken notes.

Here are the instructions for answering the questions.

I.      Do not let bias, prejudice, or sympathy play any part in your decision.

2.      Base your answers only on the evidence admitted in court and on the law that is in these instructions and questions. Do not consider or discuss any evidence that was not admitted in the courtroom.

3.      You are to make up your own minds about the facts. You are the sole judges of the credibility of the witnesses and the weight to give their testimony. But on matters of law, you must follow all of my instruction.

4.      If my instructions use a word in a way that is different from its ordinary meaning, use the meaning I give you, which will be a proper legal definition.

5.      All the questions and answers are important. No one should say that any question or answer is not important.

6.      Answer "yes" or "no" to all questions unless you are told otherwise. A "yes"

44

answer must be based on a preponderance of the evidence. Whenever a question requires an answer other than "yes" or "no", your answer must be based on a preponderance of the evidence.

The term "preponderance of the evidence" means the greater weight of credible evidence presented in this case. If you do not find that a preponderance of the evidence supports a "yes" answer, then answer "no." A preponderance of the evidence is not measured by the number of witnesses or by the number of documents admitted in evidence. For a fact to be proved by a preponderance of the evidence, you must find that the fact is more likely true than not true.

A "fact" may be established by direct evidence or by circumstantial evidence or by both. A fact is established by direct evidence when proved by documentary evidence or by witnesses who saw the act done or heard the words spoken. A fact is established by circumstantial evidence when it may be fairly and reasonably inferred from other facts proved.

7.      Do not decide who you think should win before you answer the questions and then just answer the questions to match your decision. Answer each question carefully without considering who will win. Do not discuss or consider the effect your answers will have.

8.      Do not answer questions by drawing straws or by any method of chance.

9.      Some questions might ask you for a dollar amount. Do not agree in advance to decide on a dollar amount by adding up each juror's amount and then figuring the average.

10.      Do not trade your answers. For example, do not say, "1 will answer this question your way if you answer another question my way."

11.      The answers to the questions must be based on the decision of at least ten of the twelve jurors. The same ten jurors must agree on every answer. Do not agree to be bound by a vote of anything less than ten jurors, even if it would be a majority.

As I have said before, if you do not follow these instructions, you will be guilty of juror misconduct, and I might have to order a new trial and start this process over again. This would waste your time and the parties' money, and would require the taxpayers of this county to pay for another trial. If a juror breaks any of these rules, tell that person to stop and report it to me immediately.

Presiding Juror:

1.      When you go into the jury room to answer the questions, the first thing you will need to do is choose a presiding juror.

2.      The presiding juror has these duties:

a.      have the complete charge read aloud if it will be helpful to your deliberations;

b.      preside over your deliberations, meaning manage the discussions, and see that you follow these instructions;

c.      give written questions or comments to the bailiff who will give them to the judge.

d.      write down the answers you agree on;

e.      get the signatures for the verdict certificate; and

f.      notif~y the bailiff that you have reached a verdict.

Do you understand the duties of the presiding juror? If you do not, please tell me now. Instructions for Signing the Verdict Certificate:

1.      You may answer the questions on a vote often jurors. The same ten jurors must agree on every answer in the charge. This means you may not have one group of ten jurors agree on one answer and different group of ten jurors agree on another answer.

2.      If ten jurors agree on every answer, those ten jurors sign the verdict. If eleven jurors agree on every answer, those eleven jurors sign the verdict.

If all twelve of you agree on every answer, you are unanimous and only the presiding juror signs the verdict.

3.      All jurors should deliberate on every question. You may end up with all twelve of you agreeing on some answers, while only ten or eleven of you agree on other answers. But when you sign the verdict, only those ten who agree on every answer will sign the verdict.

Do you understand these instructions? If you do not, please tell me now.

MAY 3 0 20!4          ~ ~

~4~AAA4 IAALLA   JUDGE PRESIDING

~Faye~ County, Tms

Additional Instructions

The Plaintiffs in this case seek to establish their title to the 0.992 acre tract claimed by Defendant Melody Moerbe, through what is called the legal doctrine of adverse possession.

Do not consider any other portion of the 1.93 acre tract in connection with your answers to the questions herein, which only pertain to the 0.992 acre tract, and the record title to that tract claimed by Defendant Melody Moerbe.

Adverse possession is an aspect of property law established by statutes adopted by the Texas Legislature.

Adverse possession title may be established based upon adverse possession for a period of five years time, or for a period often years time.

To acquire title under the five year period, the claim must be based on a deed which has been recorded, and the claimant must have paid taxes on the land claimed. The five year period begins to run on the date that the deed under which the claim is made, was recorded. Under the law, the deed's actual validity is not material, so long as the deed, on its face, purports to convey title to the premises claimed by the possessor.

Question No. 1

Did Juan and Juana Valdez maintain peaceable and adverse possession of the 0.992 acre tract of land for any ten year period between February 16, 1999 and March 1, 2012?

In connection with your answer to this question, you are instructed as follows:

"Peaceable possession" means the possession, use and enjoyment of real property that is continuous and is not interrupted by an adverse suit to recover the property.

"Adverse possession" means an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person.

"Exclusive possession" means an exclusive dominion over the land and an

48

appropriation of it to Juan and Juana Valdez's use and benefit to the exclusion of any other person.

"Claim of right" means that they were using and enjoying the property with the intent to claim the land as their own and to hold it for themselves to the exclusion of others.

You are further instructed that in ordór to find adverse possession, you must not only find that Juan and Juana Valdcz~s possession was actual, but also visible, continuous, notorious, distinct, hostile (i. e. adverse) and of such a character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant.

"Hostile" means that the acts performed by Juan and Juana Valdez must be of such a nature and character as to reasonably notif~' the owner of record title that a hostile claim was being asserted to the property Hostile use does not require an intention to dispossess the rightful owner, or even knowledge that there is one. There must be an intention to claim the property as one ~ own, to the exclusion of all others. Belief that one is the rightful owner and has no competition for the ownership of the land at issue is sufficient indication of a claim of ri~ht.

Answer "Yes" or "No" .

Answer: ___NO_____

Question No. 2

Did Juan and Juana Valdez maintain peaceable and adverse possession of the 0.992 acre tract of land for any five year period beginning on or after May 16, 2007?

In connection with your answer to this question, you are instructed as follows:

"Peaceable possession" means the possession, use and enjoyment of real property that is continuous and is not interrupted by an adverse suit to recover the property.

You are instructed that a suit that has been abandoned, dismissed for want of prosecution, settled, or otherwise riot prosecuted to a final judgment does not interrupt the running of the period of limitations.

"Adverse possession" means an actual and visible appropriation of real property, commenced and continued under a claim of right that is inconsistent with and is hostile to the claim of another person.

"Exclusive possession" means an exclusive dominion over the land and an appropriation of it to Juan and Juana Valdez's use and benefit to the exclusion of any other person.

50

"Claim of right" means that they were using and enjoying the property with the intent to claim the land as their own and to hold it for themselves to the exclusion of others.

You are further instructed that in order to find adverse possession under a claim based on a duly registered deed, you must not only find that Juan and Juana Valdez's possession was actual, but also visible, continuous, notorious, distinct, hostile (i. e. adverse) and of such a character as to indicate unmistakably an assertion of a claim of exclusive ownership in the occupant. and that they paid all applicable taxes on the property.

"Hostile" means that the acts performed by Juan and Juana Valdez must be of such a nature and character as to reasonably notify the owner of record title that a hostile claim was being asserted to the property. Hostile use does not require an intention to dispossess the rightful owner, or even knowledge that there is one. There must be an intention to claim the property as one's own, to the exclusion of all others. Belief that one is the rightful owner and has no competition for the ownership of the land at issue is sufficient indication of a claim of right.

You are further instructed that an adverse possessor claiming under a registered deed is considered to have constructive possession of all of the land within the boundaries of the deed not under another's actual possession, if he has actual possession of any part of those lands.

~AJJL&~k~

51

Answer "Yes" or "No"

Answer: __MPH_____No_____

Verdict Certificate

Check one:

_____ Our verdict is unanimous. All twelve of us have agreed to each and every answer. The presiding juror has signed the certificate for all twelve of us.

(To be signed by the presiding juror if unanimous.)

Question 2

_____

Signature of~èsiding Juror

M\LLL~f P. ~

Printed Name of Presiding Juror

___1_____ Our verdict is not unanimous. Eleven of us have agreed to each and every answer and have signed the certificate below.

___2_____ Our verdict is not unanimous. Ten of us have agreed to each and every answer and have signed the certificate below.

(To be signed by those rendering~ the verdict if it is not unanimous.)

i

~AL~Wç

53

~,k, M,4~

i~dh~L J~

APPENDIX C

NOTICE OF APPEAL

CAUSE NO. 2013V-052

| | | |
|---|---|---|
| JUANA MENDEZ VALDEZ | § | IN THE DISTRICT COURT |
| ET VIR JUAN VALDEZ | § | |
| | § | |
| V. | § | 155th JUDICIAL DISTRICT |
| | § | |
| | § | |
| MELODY MUELLER MOERBE | § | FAYETTE COUNTY, TEXAS |

## NOTICE OF APPEAL

Notice is hereby given that Juana Mendez Valdez, et vir Juan Valdez, Plaintiffs in the above styled and numbered cause, hereby appeals to the Court of Appeals for the 3rd District, in Austin, Texas, the Judgment rendered in this case on August 15, 2014, by the Honorable Dan Beck, Judge Presiding.

Plaintiffs consider the August 15, 2014 judgment to be legally erroneous and contrary to all of the evidence and to the great weight of the evidence, such that the Honorable Court of Appeals should reverse and render the same.

Respectfully submitted,

LAW OFFICES OF O. F. JONES III
109 W. Santa Rosa
P. O. Drawer E
Victoria, Texas   77902
(361) 573-6381
(361) 576-4607 FAX

55

By:_/s/ O. F. Jones III_____
     O. F. Jones III
     State Bar No. 10974000
     Fed. Adm. No. 5497

     Attorney for Plaintiff


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing Notice of Appeal has been served on the attorney for the Defendant, Mr. Mike Trefney,  on this 29th day of October, 2014 by regular First Class United States Mail.


     _/s/ O. F.Jones III_____
     O. F. Jones III

APPENDIX D

PLAT ( PLAINTIFF'S EXHIBIT 8)

(This document refused to scan.  Please refer to the actual exhibit, Plaintiffs' Exhibit 8, Vol 6 Reporters Record.  This exhibit is also the same as Defendant's Exhibit 4)

APPENDIX E


APPELLANTS MOTION FOR JUDGMENT
NOT WITHSTANDING THE VERDICT


**CAUSE NO. 2013V-052**

58

| JUANA MENDEZ VALDEZ | § | IN THE DISTRICT COURT |
| ET VIR JUAN VALDEZ | § | |
| | § | |
| V. | § | 155TH JUDCIAL DISTRICT |
| | § | |
| | § | |
| MELODY MUELLER MOERBE | § | FAYETTE COUNTY, TEXAS |

## MOTION FOR JUDGMENT NOT WITHSTANDING THE VERDICT

TO THE HONORABLE JUDGE OF THIS COURT:

NOW COMES Juana Mendez Valdez et vir Juan Valdez, Plaintiffs in the above styled and numbered cause, and make and present herewith this Motion, asking the Court to disregard the answers of the jury to the Questions submitted to them by the Court in the Court's Charge, and to grant the Plaintiff's Motion for Judgment presented at the conclusion of the evidence, or alternatively, to now grant Judgment for Plaintiff not withstanding the verdict.

### I.

Plaintiff submits that the court should disregard the jury's answers because the evidence was undisputed and the answers of the jury are contrary to all of the evidence, to the great weight and preponderance of the evidence, and Plaintiff's position was established as a matter of law.

### II.

Attached hereto is a Brief in support of this motion and an Analysis of the evidence before the court and the law applicable. After reviewing this presentation, Plaintiff believes that the Court will find that the denial of Plaintiff's Motion for Instructed Verdict at the close of the evidence by both parties was error, and that the Court should now grant this motion.

Accordingly, Plaintiff's pray that the Court grant judgment for Plaintiffs and sign the proposed judgment presented, and for general relief.

Respectfully submitted,

LAW OFFICES OF O. F. JONES III
109 W. Santa Rosa
P. O. Drawer E
Victoria, Texas 77902
(361) 573-6381

59

(361) 576-4607 (Fax)

By: _____/S/_____
        O. F. JONES III
        State Bar No. 10974000
        Attorney for Plaintiff


Certificate of Service

     I certify that I have forwarded a copy of the foregoing Motion for Judgment to counsel for the defendant, Mike Trefny, by first class United States Mail on this _____ day of June, 2014.

_____/S/_____
        O. F. Jones III

**BRIEF IN SUPPORT OF PLAINTIFF'S MOTION
FOR JUDGMENT NOTWITHSTANDING THE VERDICT**

60

1. **Authority, propriety and criteria for the Court granting a Motion for Instructed Verdict**

Rule 268 of the Texas Rules of Civil Procedure authorizes a Motion for Instructed Verdict. The standard of review for reviewing the granting of such a motion is explained by the Texas Supreme Court in *Szczpanik v. First Southern Trust Company*, 883 S. W. 2d 648 (Tex. 1994), where the court said:

> "In reviewing the granting of an instructed verdict, we must determine whether there is any evidence of probative force to raise a fact issue on the material questions presented. *Collora v. Navarro*, 574 S. W. 2d 65, 68 (Tex. 1978). We consider all of the evidence in a light most favorable to the party against whom the verdict was instructed and disregard all contrary evidence and inferences; we give the losing party the benefit of all reasonable inferences created by the evidence. *White v Southwestern Bell Tel. Co.*, 651 S. W. 2d 260, 262 (Tex. 1983). If there is any conflicting evidence of probative value on any theory of recovery, an instructed verdict is improper and the case must be reversed and remanded for jury determination. *White*, 651 S. W. 2d at 262".

As the Court will recall, although Defendant offered some exhibits, and her own testimony, none of that evidence was "conflicting" or "contradictory" to Plaintiffs evidence as to her meeting the elements of adverse possession. Defendant can only argue that Plaintiffs did not carry their burden because the Plaintiff's evidence is deficient in some manner.

> In *Anchor Casualty Company v. Bowers*, 393 S. W. 2d 168, the Supreme Court said: "Recently we stated that the uncontradicted testimony of an interested witness cannot be considered as doing more than raising an issue of fact. An exception is made when the testimony of the interested witness is clear, direct, and positive, and there are no circumstances in evidence tending to discredit or impeach such testimony. *Great American Reserve Ins. Co. v. San Antonio Plumbing Supply Co.*, 391 S. W. 2d 41(Tex. 1965)"

In addition, the Court held in *Great American Reserve* that the exception to the rule is especially true when the opposite party has the means and opportunity of disproving the testimony if it is not true, and fails to do so, citing *Owens Development Co. v Calvert*, 157 Tex. 212, 302 S. W. 2d 640 (1957) and *McQuire v. City of Dallas*, 141 Tex. 170, 170 S. W. 2d 722 (1943).

Plaintiff now asserts that all of her evidence and testimony met the criteria set out and demanded by each of the foregoing decisions, with respect to each element of her adverse possession claim that she has the burden to carry. While defendant's counsel tried hard to impeach her, and to attack her credibility, we assert that he could only attack the affidavit that Mr. Steinhauser prepared for her to sign, and that attack was actually more on Steinhauser than on Plaintiff. As a result, all of her testimony relating to the critical elements are clear, direct, and positive, but even more importantly, not contradicted by any other evidence. The court will recall that Mrs. Moerbe was unable to deny or contradict Plaintiff with regard to each essential element, because Mrs. Moerbe took the position that she did not know that Mrs. Valdez was there until 2009. And in addition, Mrs. Valdez's testimony was for the most corroborated by other testimony or documentation. Attached is an Analysis of that evidence for the court's review, and of course the Court heard the evidence and has the court reporter's records available if needed.

61

Defendant could contend that the Court was correct in submitting the case to the jury because there were issues of credibility as to any or all of the witnesses. But the fact is that any issue of credibility does not pertain to the real issues, and the critical facts were all established by undisputed, unchallenged factual testimony. There are no issues of credibility with respect to the individual elements that Plaintiffs are required to prove to establish limitation title.

2.        **Peaceable possession and interruption thereof**

The undisputed evidence reveals that the defendant Moerbe did not file any litigation seeking to interrupt the possession of the Plaintiff of the tract at issue until she filed the Justice Court forcible entry and detainer suit in March, 2012.

This suit does not interrupt the time frame for Plaintiff to claim title under the ten year statute. Plaintiffs claim under the ten year statute began at least when Plaintiffs acquired the first deed from Mrs. Gordon in February, 1999. (Plaintiff could assert possession by tacking, and claim from Mrs. Gordon's deed in 1992, but Plaintiffs agree that they cannot establish hostile possession by Gordon from that date.) But any ten years before March, 2012 is sufficient to vest adverse possession title in Plaintiffs, in so far as this element of the claim is concerned. Plaintiff's assert that their peaceable, uninterrupted possession from February, 1999 to at least March, 2012, a period of 13 years one month, is undisputed and established as a matter of law.

If the ten year claim is good, then the five year claim is immaterial. The five year claim will only be needed if the plaintiff's claim under the ten year statute fails for some other deficient element.

The five year claim can begin with the filing of the second deed from Gordon to Plaintiffs, which occurred on May 16, 2007. The five year statute time frame has not been interrupted unless the Justice Court case is sufficient for that purpose.

Plaintiff requested that the Court instruct the jury as follows:

"You are instructed that the suit that was filed by Melody Moerbe in the Justice Court of Fayette County on March 1, 2012 was not, under the law, an adverse suit sufficient to constitute "an interruption by an adverse suit to recover the property".

The Court did not submit such instruction, but instead only instructed the jury that

"a suit that has been abandoned, dismissed for want of prosecution, settled, or otherwise not prosecuted to a final judgment does not interrupt the running of the period of limitations."

This latter instruction was inadequate, insufficient, and did not provide the jury any help, because the court did not further instruct the jury as to the status of the justice court case that had been filed by Defendant. The court knew that suit was ineffective, or at least knew that it had not been prosecuted to a final result, but the jury did not. As a result, since the jury heard testimony about such a suit having been filed, the jury was at liberty to speculate and conclude that the justice court suit so filed was a viable vehicle to interrupt the period of limitations.

Actually, defendant objected to this instruction for this same reason, so both sides were not happy with this instruction, but for different reasons.

The court should have given the instruction requested by Plaintiff, because the justice court case was a non entity; the judgment rendered in it by the justice of the peace was void, and the county court should have granted Plaintiff's plea to the jurisdiction instead of merely abating the case there until the decision of this court was rendered.

This court based its instruction actually given to the jury on a sentence from Texas Jurisprudence 3rd, on the subject of Adverse Possession, in Sec. 72, which stated as follows:

62

"A suit that has been abandoned, dismissed for want of prosecution, settled, or otherwise not prosecuted to final judgment does not interrupt the running of the period of limitations."

The court did not instruct the jury as to whether any of these actions had occurred, so the instruction was essentially a "non instruction". Actually, the Court should have used the next sentence in Section 72, from Texas Jurisprudence, as a beginning point; that sentence says " Likewise, where it appears that the court did not have jurisdiction over the claimant, a judgment rendered in the case is ineffective to interrupt the running of the statute", and then modified it as requested by Plaintiffs.

In connection with this latter sentence, Texas Jurisprudence cited the case of *Barrett v. McKinney*, 93 S. W. 240, 243 (Tex. Civ. App. 1906). In that case, the Court said:

"Having instructed the jury that peaceable possession meant such possession as is not interrupted by adverse suit to recover the estate, and the judgment and proceedings had in the case of Robertson against the plaintiff having been introduced in evidence, it became necessary, in order to prevent a misapprehension by the jury of the effect of the Robertson suit, that an appropriate instruction informing them that such suit did not stop the running of limitations should have been given. *Without such instruction in connection with the one given by the court and quoted above, the jury were more than likely to conclude that said suit did interrupt the running of limitation. Such was not the effect of said suit and the failure to so tell the jury was, we think, reversible error*". And the court did reverse the case.

The posture of the *Barrett* case, regarding the court's charge, is nearly identical to this case. Thus the *Barrett* case is dead on point. The jury in this case were in fact misled, and did so conclude. In addition, the jury sent out a note, inquiring as to whether the Plaintiff's use and occupancy under the ten year statute had to extend to the entirety of the property claimed. The court had instructed the jury, as to Question No. 2, that the use of part of the property under the deed claim was sufficient to encompass all of the property claimed under the deed; that instruction clarified for the jury that the answer to their inquiry was in the negative, so that the only basis for the jury to conclude and answer both issues in the negative was on the presumed belief that the justice court forcible entry case stopped the limitation period.

The *Barrett* case is admittedly an old case. But there have been numerous other cases since then that have reached the same result; when ever it is necessary to determine title in a justice court case of either forcible detainer or forcible entry and detainer, the justice court has no jurisdiction, and any judgment so rendered is void. So it is a non entity; it has no force or effect, and it is if it never happened. See the following cases which hold the same: *American Spiritualist Assn v. Ravkind*, 313 S. W. 2d 121 (Tex. Civ. App. - Dallas, 1958, err. ref. n. r. e.), cited in the County Court Plea to the Jurisdiction which counsel for Plaintiff gave the court to read during the trial of this case; *Dent v. Pines*, 394 S. W. 2d 266, (Tex. Civ App. - Houston, 1965, no writ); *Johnson v. Fellowship Baptist Church*, 627 S. W. 2d 203, (Tex. App- Corpus Christi, 1981), citing *Gentry v. Marburger*, 596 S. W. 2d 201 (Tex. App. - Houston [1st Dist] 1980); *Williamson v. Johnson*, 492 S. W. 2d 327, 330 (Tex. Civ. App. - Tyler, 1973, no wr.)

In *Rice v. Pinney*, 51 S. W. 3d 705, (Tex. App. - Dallas, 2001) the Dallas Court of Appeals noted, in its footnote 4, that one indication of when a justice court could exceed its jurisdiction was when a landlord tenant relationship is lacking. Defendant admitted in this case, in its answers to Interrogatories, that no landlord tenant relationship existed in this case. Defendant did not offer any evidence of any previous relationship or factual situation where any kind of landlord tenant

relationship would exist.   That is why the defendant filed a forcible entry and detainer case in the justice court, under Texas Property Code §24.001, and not a forcible detainer claim under§ 24.002. A similar holding was rendered  in *Ward v. Malone*, 115 S. W. 3d 267, 270 (Tex. App.- Corpus Christi, 2003).

In *Gentry v. Marburger*, cited above, the Court noted that

"the pleadings raised two indicia of title to the property as being in appellee, vis, the right to occupy the premises through the life tenancy of her husband and by adverse possession.  The petition in the justice court was for forcible detainer only, there being no claim that appellant was a tenant or that her entry upon the premises was unlawful.  No basis existed for the action of forcible detainer.  The justice court had no jurisdiction of the suit because the title to the premises was directly involved.  Therefore the justice court judgment was void."

Other cases involving the question of whether the court should have instructed the jury more specifically that the justice court case in this instance was a non event and should not have been considered as an interruption are *Haith v. Drake*, 596 S. W. 2d 194, (Tex. Civ. App. - Houston [1st Dist.] wr. ref. n.  r. e.);  *Mitchell v. Armstrong Capital Corp.*, 911 S. W. 2d 169 (Tex. App. - Houston [1st Dist] 1995 wr. den); and *Fandey v. Lee*, 880 S. W. 2d 164, (Tex. App. - El Paso 1994, wr. den. )

See also *Rodriquez v. Sullivan*, 484 S. W. 2d 592, (Tex. Civ. App- El Paso, 1972, no wr.) In that case, the Plaintiff contended that he had sold the property to defendant under a purchase sale contract, as to which the defendant had defaulted.  Defendant contended that the contract had been lost, but that he had paid the purchase price and was entitled to a deed. The Court held that a justice court judgment was void and should have been enjoined from execution, since title was involved and the justice court did not have jurisdiction.  Whether title was claimed as in that case, or as here by adverse possession, is essentially immaterial to the issue that if the defendant claims some vestige of title, and if that title would defeat the justice court action, then the justice court has no jurisdiction because it would have to adjudicate title.

It is also noted that in the *Dent* case cited above, the court also said: "it appears from the record that appellant has never been in actual possession of the property.  The evidence of title introduced could show no more than constructive possession.  "Constructive possession" will not support an action of forcible detainer, for it necessarily involves an inquiry as to title.  *American Spiritualist Assn v. Ravkind*, 313 S. W. 2d 121 (Tex. Civ. App. - Dallas, 1958, err. ref. n. r. e.)".

By her own admission, Mrs. Moerbe had never used this property in any way, and according to her, she did not even know where it was; even though she said that she had tried to market it in the mid 1990's, and that she had tried to list it with a broker in or about 2000, and although her attorney claimed in final argument that the sign that Mrs. Valdez saw on the property was Mrs. Moerbe's rather than Mrs. Gordon's sign, there was no evidence that Mrs. Moerbe ever had more than "constructive possession" of any part of the 1.00 acre Seeberger tract.

3.      **Extent of possession required by Plaintiffs**

As the court will recall, the jury sent the court a note, inquiring as to whether the Plaintiff had to occupy the entirety of the tract in question for the entire ten year period.   The jury then answered both Questions "no" , apparently believing that Plaintiffs had to occupy the entire 0.992 acre tract for the entirety of either the ten or the five year period.  That is not the law, and the court's instruction on adverse possession perhaps should have made that clear, but the

64

instruction given does not tell the jury that possession of the entire claimed tract, from corner to corner, is required.   The jury finding is in fact directly contrary to the instruction given in connection with Question No. 2,  and yet the jury answered that question "no" anyway, in violation of the Court's instruction.

If the jury's "no" answers   were based on a perceived failure of one of the other elements, and not this issue, then that is contrary to the law and evidence as well, but that was not the indication of the jury.

With regard to Question No. 1, pertaining to the ten year statute, the case law is clear that a person claiming adverse possession of a tract is not required to use the entirety of the tract the entire time, but "only so much of it as is useable and adaptable to the circumstances" (the entire time).

In *Doyle v. Ellis*, 549 S. W. 2d 62, (Tex. Civ. App. - Waco, 1977,  no wr. hist.)  the Waco Court of Appeals restated the law as "A limitation claimant under Article 5510 (now CPRC §16.026) is only required to use the land for a purpose to which it is adaptable and capable of being used. *Wallis v. Long*, 75 S. W. 2d.  138, 142 (Te. Civ. App. - Galveston. 1934, wr. Ref.)"   This case has been followed on numerous occasions; *Rudy v. Hardy*, 610 S W. 2d 565, (Tex. App. - Waco, 1980); *De Alonzo v. Solis*, 709 S. W. 2d 690, (Tex. App. - San Antonio, 1985); *The Heirs of Berry and Sarah Simmons v. Bouligny*, (Tex. App. - Corpus Christi, 2010 Cause No. 13-09-00269-CV; apparently unpublished).

Mrs. Valdez testified that the property was totally brush infested and trash filled, and that it was a very hard job to clear it, and that it took a lot of time.  Mrs. Moerbe also testified that the property was brush, and incapable of any specific use when she was trying to market it in the mid 1990's, to the point that she did not know exactly where the corners were and where the property actually lay.  Even though her other testimony as to when she discovered the Plaintiffs on the property, and when she determined that they were on her claimed property was somewhat inconsistent, her confirmation of the condition of the land establishes that when Plaintiffs went on the property in 1999 and began to clear it, they were using it for the best purpose for which it was then adaptable; the statute was satisfied.

Defendant's counsel argued to the jury that Plaintiff had filed a false affidavit, and that she should not be believed.  But the truth of the matter is, as the court knows, that the alleged acts of falsity in the affidavit that counsel made such a big deal about pertained only to the statement that Mrs. Gordon had paid taxes on the 1.93 acre tract, rather than the 0.493 acre tract taxed by the Fayette County Tax Appraisal District; that statement was admittedly a mistake by Mr. Steinhauser, the author of the affidavit, and has nothing to do with the extent of the Valdez use and occupancy. The so called credibility issue is a red herring.

4.    **The elements of visible, open, notorious and hostile**.

In *Griswold v Comer*, 161 S. W. 423, 427 (Tex. Civ. App. - Galveston, 1913,  modified on appeal as to the extent of the interest involved, Tex. Com. App. - Sec. A., opinion adopted, 209 S. W. 139), the Court held that "fencing the land and using it for a pasture for live stock, such use being continuous and exclusive and without dispute visible and notorious" was sufficient to establish adverse possession. The court said "certainly the facts show that the slightest diligence on the part of appellants would have enabled them to learn of this adverse claim and its active assertion".   Clearly moving a mobile home on the property and living there for a period of 14 years  is more visible, open, notorious, hostile and adverse than merely fencing the property.

In the old case of *Brownson v. Scanlon*, 59 Tex. 222, 226 (1883), the Supreme Court held

that a house and other improvements on the property was sufficiently visible and notorious to constitute adverse possession; the court said that the party claiming a superior title would not be excused for ignorance of the particular claim of right, because he is not in the condition of an ordinary and casual observer, but must diligently look to his own interests, know the boundaries of his own land, and ascertain the extent, meaning and locality of any settlement made within them without his authority. See also *Stafford v. Jackson*, 687 S. W. 2d 784 Tex. App. - Houston [14th Dist}, no wr. hist.)

Counsel for Plaintiffs has cited some old case law to the court in this brief, but would remind the Court that the law pertaining to adverse possession and Texas property title law are part of the oldest elements of the litigated common law in Texas, and for the most part, what was decided by the early courts of the Republic and state are still the law on these issues.

5. **Notice to Defendant**

Counsel for Plaintiff has spoken with two of the jurors. Both jurors stated that the issue of notice was critical and that the jury believed that the Defendant did not ever receive any notice of Plaintiff's adverse claim.

In addition to the cases cited in Part 4 above, Plaintiffs would point out to the Court the provisions of Texas Property Code §13.02, which establishes that the filing of the affidavit and new deed from Gordon in 2006 and 2007 are notice to the defendant as a matter of law.

Mr. Steinhauser also testified to these facts. Even if the jury chose not to believe Mr. Steinhauser, and were critical of him or believed that he had acted misappropriately, to the extent that the adverse jury verdict is based on a lack of notice to the defendant, as a matter of law that answer is wrong and cannot stand.

Between the notice imparted by open, visible occupancy and §13.02, defendant was given all the notice the law affords her, and she chose to ignore her own property; even after by her own admission she had knowledge of such adverse possession in 2009, she elected to do nothing for an additional three years.

This defendant lost her tract, not by the Plaintiff's acts and possession, or by virtue of Mr. Trefny's plea to the jury that it was all Mr. Steinhouser's scheme and conspiracy, but by her own neglect and inaction.

**Comparison of Plaintiff's testimony and evidence to jury charge**

**(1) Overall summary of Plaintiff's case**

Plaintiffs witnesses were Plaintiff, Mr. Tim Hearitige by excerpts from his deposition, Mr. Moring, the tax appraisal office chief appraiser, and Mike Steinhauser. The sole witness for the defense was the defendant, Melody Moerbe.

Plaintiff testified that she and her husband acquired a deed from Mrs. Gordon dated in February, 1999. (Plaintiff's Exhibit 4). She claimed that that deed was based on what Mrs. Gordon had told her as to the property that she was buying, and that she and her husband immediately set out to clear the property. When they had cleared enough to do so, they moved a mobile home onto the property, built a drive way and a parking area and a patio. Her home address is 811 Walnut, Flatonia, Texas. She testified that the photo of her home showed it in the same fashion as it was when they first moved in. She said that she and her husband had now lived in that home for 14 years.

Plaintiff testified that she and her husband began to clear property in order to locate their mobile home. They cleared the area for their mobile home first, and moved it on to the property, at

about the same location where the sign was that she had seen that indicated the property was for sale, by a person she later determined to be Mrs. Gordon. After they had finished moving their mobile home on to its location, they began to clear other areas, and subsequently moved another mobile home on the tract. Ultimately they cleared the entire tract lying between Hackberry, Walnut and Collins Street and put other mobile homes on the property as well.

She testified that her possession and use and enjoyment of the property had been exclusive to her and her family ever since she first moved on to it; that it was open, visible, and that she believed at all times that they were the owners of the property, so that their use and possession was hostile to any one else, including any one with record title. On cross examination Mr. Trefny tried to back her off her testimony, but he was not successful and she never did.

When she acquired the title to the property, she notified the tax office and she thereafter received tax notices for each year after 1999, and she paid the ad valorem taxes on the land and also on the mobile homes in each year thereafter when she got the notice.

Plaintiff's Exhibit 8 revealed the following improvements/costs that they incurred, and which they paid, as indicated:

South Central Electric    Meter installation    6/9/00    $1,210.00
Additional:
Receipt 12/30/05
Electric deposit                    200
Water deposit                        50
Water tap                           375
water deposit                        50

R. B. Construction    Pole service   Invoice dated 1/25/06

Sewer tap    711 Collins              375
Water tap    711 Collins              375

Electric deposit   711 Collins        275
Water deposit                          50

Receipt 6/05/07                       750
Sewer tap    809 Walnut               375
Sewer tap extension                 1,500
Water tap    809 Walnut               375
Electric pole                         125

Electric deposit   809 Walnut         200
Water deposit                          50

Receipt 4/20/09
Payment on boring                      70

```
   Receipt 8/07/09
Payment on boring                    50


Receipt 3/19/09
Payment on boring                    70


Receipt 3/10/09
Electric deposit                    200
Water deposit                        50
Water tap                           375
Waste water tap                     375
Electric pole                       125


Receipt 5/27/09
Wastewater tap                       65


Receipt 4/24/09
Permit & Zoning fees                100


808 N, Hackberry
Sewer tap                           375
Water tap                           375
Electric deposit                    200
```

They bought the mobile home in which they live, and they are still paying on it. They also bought the other mobile homes that they moved onto the property, at the times indicated in Exhibit 8, except for one which was given to them but they paid the moving costs.

**(2)** **Elements of adverse possession as submitted to the jury, compared to Plaintiff's testimony**

Question No. 1     Ten year statute

Peaceable Possession

| | |
|---|---|
| Valdez: | no one filed any lawsuit against them between February, 1999 when they acquired deed, and March, 2012, when Moebe filed Justice court case |
| Moerbe: | admitted no suit filed until Justice Court case filed in March, 2012 |

Adverse possession:

| | |
|---|---|
| Valdez: | immediately went onto the property after obtaining the deed from Gordon; started clearing it |
| | Located first mobile home (where they now live) in early 2000 |
| | Lived in same place for 14 years, since 2000 |
| | Claimed property as their own; thought it was theirs |
| | Moved second mobile home on property in 2005; been there |

68

ever since

Tax records:    Reflect Valdez paying taxes on 0.493 acre tract
(Exhibit 7)       beginning in 1999

Paying taxes on mobile home on this tract beginning in 2000

Reflects paying taxes on second mobile home beginning in 2005

Exhibit 9:      Reflects utilities hook ups for first mobile
           home in 2000

Additional mobile home utility hook ups beginning in 2005

Moerbe:    Never saw her there until 2009; tried to get in touch with her in 2009, but did nothing until 2012

**Exclusive Possession:**

Valdez:    Lived on property since 2000, for 14 years. No one has ever challenged their right to be their until 2012. No one else lived on property or used it except her, her family,and her tenants

Moerbe:    Admitted no actual possession by her

**Claim of right:**

Valdez:    Continuously claimed property to be hers; paid taxes each and every year on property as well as mobile homes

Didn't know tax office had it wrong, or problem with location, until Hearitige survey; then filed affidavit and recorded new deed from Gordon; Steinhauser sent letter notice of filing to Tax Office, which changed the description of the land being taxed

Moerbe:    claims no knowledge of claim

**Visible:**

Valdez:    cleared land, entire tract visible; see photos

Moerbe:    didn't see mobile home there until 2009

**Continuous:**

Valdez    lived there continuously

Moerbe:    doesn't know

**Notorious:**

Valdez:    lived there continuously, with other families and other mobile homes since 2005

Moerbe:    doesn't know

**Distinct:**

Valdez    visible, open, continuous

Moerbe:    doesn't know

**Hostile:**

Valdez:    Definition in charge is inclusive;

Used property to exclusion of all other; believed it to be hers,

particularly after new Gordon deed in 2006

Moerbe:        doesn't know


Question No. 2     Five year statute

All of the Plaintiff's testimony regarding the various elements required to establish actual adverse possession are equally applicable to the five year statute as they are to the ten year statute.

But, in addition, the parties stipulated that all assessed taxes had been timely paid by both Plaintiff and Defendant.

It was and is undisputed that Mr. Steinhauser prepared an affidavit, which was filed for record in 2006, and he prepared and obtained a new deed from Mrs. Gordon, which was filed on May 16, 2007, thus triggering the five year statute.

Mrs. Valdez testified that she did not read English well, and did not understand all that Steinhauser put in the affidavit, but that she understood that she was describing the boundaries of the property that she was claiming, and that this was the same property that she had told Mr. Hearitgie that she was occupying and claiming when he did the survey in 2006.

She testified that she did not know Mrs. Moerbe and had never met her.  A man came to her house in or about 2009, talked to her daughter, and told them all to get out and put up notices to that effect.   She did not know who he was.  She did not hear anything more from anyone until March, 2012, but one of her tenants did get scared and moved out.

Jury foreman says jury felt Valdez did not use entirety of property whole ten years

No notice to Moerbe   (Did not agree that filing affidavit and new deed was legal notice to her)

Also said felt real problem was incompetence and malpractice of attorney Steinhauser and should sue him


_____

O. F. Jones III

70

APPENDIX NO. F

BRIEF IN COUNTY COURT
ON JURISDICTION

CAUSE NO. 3592

| | | |
|---|---|---|
| MELODY MUELLER MOERBE | § | IN THE COUNTY COURT |
| | § | |
| V. | § | |
| | § | |
| JUANA MENDEZ VALDEZ | § | FAYETTE COUNTY, TEXAS |
| ET VIR JUAN VALDEZ | § | |

**DEFENDANT'S RESPONSE TO THE PLAINTIFF'S BRIEF AND RESPONSE    TO**

71

**THE DEFENDANT'S PLEA TO THE JURISDICTION**

**TO THE HONORABLE JUDGE OF THIS COURT:**

NOW COMES Juana Mendez Valdez et vir Juan Valdez, Defendants in the above styled and numbered cause, and make and present herewith this Response to the "Brief and Response to the Defendant's Plea to the Jurisdiction" of this Court, which was presented to the Court on May 2, 2013, the date that a hearing on the Plea was scheduled to be presented to the Court.

The written Brief of the Plaintiff does not actually cover all of the issues and all of the arguments that were submitted to the Court during the hearing. Defendant now desires to address all of the arguments submitted by Plaintiff, as well as the written brief, and will do so in what is hoped is a sequential manner which will assist the court in determining whether to grant the Plea to the Jurisdiction.

I.
**What does the Court consider in determining how to rule on a Plea to the Jurisdiction?**

(1)   As the court knows, the presentation of a case in the Justice Court is governed by the Texas Rules of Civil Procedure. The positions of the parties in the Justice Court may be presented orally, and without written pleadings, (TRCP 525) but in this Constitutional County Court, on appeal from the Justice Court, all pleadings are required to be in writing, (TRCP 574a) and conform to the requirements of the Texas Rules of Civil Procedure. TRCP 90 provides that every defect, omission or fault in a pleading which is not specifically brought to the attention of the court is waived. The way that should be done is described in Rule 91, which provides that if there is a defect, omission, obscurity or other insufficiency, that a Special Exception pointing that out shall be filed with the court. The obvious purpose for that is to allow the pleader to correct it, if it is correctable. (See also TRCP 80).

72

Defendant's Plea to the Jurisdiction was on file in this case for many days before the date of the hearing on May 2, 2013. Counsel for the Plaintiff never filed any Special Exception directed toward the adequacy of the Plea to the Jurisdiction, or even a response to the Plea to the Jurisdiction, until the day of the hearing. Yet, in the written Brief and Response, filed forty five minutes before the hearing was to begin, he complains that the Plea is general, vague and unspecific, and that "it further fails to provide any factual allegations to support a claim that there is a bona fide title dispute." In oral argument to the court, counsel for Plaintiff made the same argument, and while admitting that there was a separate suit now pending in the District Court, where title to the land in question is directly at issue, and not really disputing in this case that there is not an issue of title, he asked this court to deny the Plea on the basis of insufficient pleadings. This was not appropriate; prior notice of that contention should have been made, by special exception, more than ten days before the hearing, in order to allow defendant to amend the plea and make it more specific if need be. As the court file will show, Defendant has now done that, and the Amended Plea to the Jurisdiction pleading that is now before the court is not subject to that argument by counsel for Plaintiff any longer.

(2)     The reason Plaintiff wanted to convince the court that the Plea to the Jurisdiction was inadequate in some manner was because Plaintiff then contended that the Court had to rule on the Plea based only on the basis of that pleading. That also is incorrect. It is interesting to note that Plaintiff quotes the statement in the Texas Supreme Court case of *Texas Association of Business v. Texas Air Control Board*, 852 S. W. 2d 440, 446 (Tex. 1993) that the Court should take the facts pleaded as true; if this court were to do that, then the Defendant's pleading that the court does not have jurisdiction because there is a title dispute would end the matter then and

73

there.

But plaintiff misconstrues what the court actually held in that case. The Court in that case made two statements pertaining to review of a Plea to the Jurisdiction. First the court noted that there was a difference in determining jurisdiction by a trial court and by an appellate court. The court noted that a review of the pleadings by a trial court **could** be sufficient, because the opportunity to amend existed in the trial court; i.e., while usually the court would be reviewing the plaintiff's pleadings to determine if jurisdiction had been properly invoked, the same rule will also apply to the defendant's Plea to the Jurisdiction as well. In such event, if the court believes that the Plea should be granted, then the trial court must and should allow time for the party to amend and cure the defect in the pleading, if that can be done. If it cannot, then the plea should be granted. But then the court addressed appellate review and held that in that event, the appellate review required a more stringent test of the pleadings and the entire record. So the only time when a trial court can definitively rule, just based on the pleadings alone, is where the pleading affirmatively shows on its face that jurisdiction is lacking. See *Heckman*, below.

And the Texas Supreme Court has also recently held that a trial court not only can, but in some instances must, consider evidence in order to determine whether jurisdiction exists. *Heckman v. Williamson County*, 369 S. W. 3rd 137, 150 (Tex. 2012). That is why counsel for Defendant had the client there at the hearing on May 2, and was ready to produce and offer to the court Defendant's title documents establishing that she did have at least a valid claim to title to the land, under one or more of the applicable statute of limitations identified in the pleadings. As the court said in *Heckman*, "We must grant the plea to the jurisdiction if the plaintiff's pleadings affirmatively negate the existence of jurisdiction. And we must grant the

74

plea if the defendant presents undisputed evidence that negates the existence of the court's jurisdiction."

So the conclusion is that the trial court should review the pleadings, and if there is affirmative lack of jurisdiction invoked, then either allow the party to amend and cure, or dismiss. But if the pleadings are only allegations that involve factual disputes to establish jurisdiction, then the court can and should consider evidence and the entire record to determine whether jurisdiction has been invoked.

II.

**So, with those procedural considerations, what does the trial court look for in determining whether the Court has jurisdiction, and more specifically, in this case, how would the court determine if there is an issue of title which can only be decided in the District Court?**

The Justice Court only has jurisdiction to determine the right to possession, and does not have jurisdiction to determine title; the issue of title can only be determined in a district court. TRCP Rule 746; Sec. 24.001 et seq., Texas Property Code; *Blaylock v. Riser*, 354 S. W. 2d 134, 136, (Tex. 1962); Sec. 27.031, Government Code. Of course, if the Justice Court does not have jurisdiction over the case, then neither does the County Court, on appeal. *Rice v. Pinney*, 51 S. W. 3d 705, 709 (Tex.App. - Dallas, 2001, no pet.)

If Defendants can establish that they do in fact have title to the property, even if based on adverse possession, then their claim of title will be held to be superior to the claim of the Plaintiff, even though the plaintiff has a chain of record title. Tex, Civ. Prac. and Remedies Code §16.030 (a); *Burton's Heirs v. Carroll*, 72 S. W. 582 (Tex. 1903). If the Defendants in this case

75

do in fact have valid title to the property, whether based on a deed or based on an adverse possession claim, then their title gives them the superior right to possession, and the justice court would have erred in awarding possession to the Plaintiff.

In a forcible entry and detainer action, a plaintiff is not required to prove title but is only required to show sufficient evidence of ownership to demonstrate a superior right to immediate possession. If the question of title is intertwined with the issue of possession, then possession may not be adjudicated without first determining title. *Villalon v. Bank One*, 176 S. W. 3d 66, 70 (Tex. App. - Houston [1st Dist.], 2004, pet den.); *Morris v. American Home Mort. Servicing, Inc.*, 360 S. W. 3rd 32, 34, (Tex. App. - Houston [1st Dist] 2011, no pet); *Lopez v. Sulak*, 76 S. W. 3rd 597, 605 (Tex. App. - Corpus Christi 2002, no pet.). If the right to possession cannot be determined without first determining actual ownership of the property then the Justice Court does not have jurisdiction. *Padilla v. NCJ Dev., Inc*. 218 S. W. 3d 811, 815, (Tex. App. - El Paso, 2007, pet dism); *Aguilar v. Weber*, 72 S. W. 3d 729, 732 (Tex. App. - Waco 2002 , no pet); *Dormady v. Dinero Land & Cattle Co.*, 61 S. W. 3d 555, 557, ( Tex. App. - San Antonio, 2001 pet. dism.); *Gentry v. Marburger*, 596 S. W. 2d 201, 203 (Tex. App. - Houston [1st Dist] 1980, wr ref n r e.).

In the latter case, *Gentry v. Marburger*, the court held that when the right of possession requires determination of the validity of an adverse possession claim, the court will not have jurisdiction. See also O'Connor's Texas Causes of Action, p. 434, 2013 Ed..

In *Ward v. Malone*, 115 S. W 3d 267, at page 270, the Corpus Christi Court of Appeals said that "One indication that a justice court, and county court on appeal, is called on to adjudicate title to real estate in a forcible detainer case - and thus exceed its jurisdiction - is when

76

a landlord-tenant relationship is lacking", citing *Aguilar v. Weber*, cited above and other cases, and holding that the justice court and county court did not have jurisdiction in that instance.

See also one of the cases presented to the court by Plaintiff's counsel on May 2, *Sparkman v. State*, 968 S. W. 2d 373, where the court held that there was an issue of title and thus no jurisdiction.

The facts in this case are simple, and probably essentially undisputed. The property in question lies between the main part of Flatonia, just east of F. M. 609, and south of and adjacent to the Interstate 10 frontage road; it is now inside the city limits. The Plaintiff, now claims a record title to the property in question. Mrs. Moerbe, inherited a one half interest in the property in question from her mother, and then she was deeded the other one half interest by her uncle, in December, 2011. Prior to that, her grandmother had held title to the property for many years, leaving it by will to her mother and uncle. Defendants do not dispute that Plaintiff has a chain of title. However, none of the Plaintiff's predecessors in title had been on the property to occupy it in years, nor had Plaintiff prior to her being delivered the deed from her uncle. Plaintiff has admitted in written discovery that there was no landlord tenant relationship between the parties. Plaintiff did not have actual possession of the premises, and her predecessors have not had any actual possession for at least twenty years. Plaintiff's claim therefore is to constructive possession, based on her claim of a chain of title.

Defendant Juana Mendez bought property from Annie Marie Gordon in 1999; she received a deed to the property that Mrs. Gordon had pointed out to her as what she owned. Juana Mendez and Juan Valdes have lived together since 1997; they were legally married in December, 2006. Defendant, and her husband, went into possession of the property in 1999, and she and her husband cleaned up the property, moved a home onto it, and later moved

77

additional mobile homes on to the property that she now rents to tenants.  In 2006 she had the property that she was claiming surveyed, and she then filed an Affidavit of Use and Occupancy to the surveyed tract, and she obtained a Correction Deed from Mrs. Gordon, describing in that deed the exact same property that was described by her survey.  Plaintiff now asserts that the property that she claims record title to is the same as that being occupied by Defendants.  Defendants claim title by virtue of the five and ten year statutes of limitations; they claim superior rights to possession by virtue of the fact that they, and their tenants, have been in sole, exclusive possession for 14 years, she has a deed to the property, and she has paid all taxes on it as they became due..

Defendants assert that there is no way that this court can determine who has the superior right of possession without first determining whether defendants claims of adverse possession title are valid, and thus the Justice Court did not and does not have jurisdiction to make that determination, which can only be made in the District Court.  The court can not determine if a right of possession, based on constructive possession, yields superior right of possession, without determining title.  See *Benevides v.Lucio*, 13 S. W. 2d 71, (Tex. Com. Appeals, Sec. A., opinion adopted, 1929); *Gulledge v. White*, 11 S. W. 527, (Tex. 1889); see also *Rodriquez v. Sullivan*, 484 S. W. 2d 592, (Tex App. - El Paso, no wr)  and *American Spiritualist Assn v. Ravkind*, 313 S. W. 2d 124,  (Tex. Civ. App. - Dallas 1958, no wr.) and *Mitchell v. Armstrong Capital Corp,* 911 S. W. 2d 169, 171, (Tex. App- Houston [1ˢᵗ Dist] 1995, pet den.)

Defendants again ask the court to find that the justice court did not have jurisdiction to grant a writ of possession, and that this court, reviewing the order of the Justice Court on appeal de novo, does not either.  Thus this court should grant the defendants Plea to the Jurisdiction,

78

which Order is separately presented again to the court. This case will then proceed to trial in the

district court as soon as reasonably possible.

Respectfully submitted,

_____

O. F. JONES III
State Bar No. 10974000
LAW OFFICES OF O. F. JONES III
109 W. Santa Rosa
P.O. Drawer E
Victoria, Texas 77902
(361) 573-6381
(361) 576-4607 (Fax)

Attorney for Defendants

### Certificate of Service

I hereby certify that a copy of foregoing Response has been forwarded via Certified Mail to counsel for Plaintiff, Mr. Michael Trefny on this 14th day of May, 2013.

_____

O. F. Jones III

79